**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**ONE 1972 CHEVROLET BLAZER**
**VEHICLE, S/N CKE182F185579,**
**Defendant-Appellant.**

No. 76–3148.

United States Court of Appeals,
Ninth Circuit.

Nov. 4, 1977.

Ernest F. Schulzke, Auburn, Cal., argued for defendant-appellant.

Larry E. Hull, Jr., Asst. U. S. Atty., Sacramento, Cal., argued for plaintiff-appellee.

Before MERRILL and WRIGHT, Circuit Judges, and JAMESON,* District Judge.

JAMESON, District Judge:

The Government brought this forfeiture action against the defendant 1972 Chevrolet Blazer vehicle, pursuant to 49 U.S.C. § 782,[1] because it had been used to transport a contraband firearm. The appellant, Steven C. Brandon, filed a claim of owner for the vehicle and an answer, as a third party claimant, to the forfeiture complaint. The district court granted the Government's mo-

---

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

1. 49 U.S.C. § 782 provides, in pertinent part:

"Any vessel, vehicle, or aircraft which has been or is being used in violation of any provision of section 1 [§ 78 of this title], or in, upon, or by means of which any violation of section 1 [§ 781 of this title] has taken or is taking place, shall be seized and forfeited."

tion for summary judgment. We reverse and remand for further proceedings.

## Background

On February 20, 1975, Charles W. Brandon, father of the appellant, was stopped while driving the Blazer, and the Blazer was searched pursuant to a search warrant. The officers discovered a homemade silencer and arrested Charles.[2] The next day Treasury agents impounded the vehicle. At that time legal title to the Blazer was in the name of Charles W. Brandon.

Steven asserts that he was the actual and equitable owner of the Blazer when it was seized. He claims that Charles owed him approximately $2,900. On January 6, 1975 they entered into an oral agreement whereby Charles agreed to sell Steven the Blazer for $4,500. In turn Steven would forgive the $2,900 debt, transfer his own car to Charles, and pay Charles the proceeds from the sale of his motorcycle.

Prior to the seizure of the Blazer, Steven had paid Charles $1,200 from the sale of the motorcycle. Charles had made the last payment on the Blazer and had requested the certificate of ownership from the finance company. Only the documentary transfers of the two vehicles remained to complete the terms of the oral agreement.

During the latter part of February, while Charles was in jail following his arrest, the certificate of ownership was received from the finance company. Charles signed the certificate transferring title to Steven on or about March 29, 1975, and Steven received a certificate of title from the California Motor Vehicle Department on April 15, 1975.

In his answer Steven claims that at the time of Charles' arrest and the seizure of the Blazer, they both considered Steven the owner of the Blazer. Charles was using the Blazer with Steven's permission, but Steven "did not consent to the use (of the Blazer) for any illegal activities, nor did he have any knowledge of the said vehicle being involved in any illegal activities".

The Government treated Steven's claim of owner as a petition for remission[3] and denied it.

## The District Court's Decision

For the purpose of its summary judgment motion, the Government did not contest any of the above facts. Instead, it relied solely on the technical requirements of California Vehicle Code Section 5600, arguing that Steven's admitted failure to comply with those requirements prior to Charles' arrest rendered ineffective the oral transfer of title and interest in the Blazer to Steven. Therefore, the Government contended, there was no genuine issue of material fact to be litigated; it was entitled to summary judgment because the legal and registered owner of the vehicle, Charles W. Brandon, had used the vehicle to transport contraband.

Steven contended in the district court, as he does here, that his actual ownership of the vehicle and his lack of knowledge of any illegal activities present triable issues of fact and that he is being deprived of his property without just compensation in violation of his Fifth Amendment rights.

While the formal order granting summary judgment did not set forth the basis of the court's decision,[4] it is apparent from the transcript of the hearing that the court concluded that where a person in possession

---

2. On July 29, 1975 Charles W. Brandon was convicted of violation of 26 U.S.C. § 5861(d), for possession of an unregistered firearm (silencer). This court affirmed the conviction on February 25, 1976.

3. 19 U.S.C. § 1618 provides for remission or mitigation of forfeiture by the Secretary of the Treasury (in this case, the Attorney General) if he finds the forfeiture "was incurred without willful negligence or without any intention on the part of the petitioner . . . to violate

the law, or finds the existence of such mitigating circumstances as to justify" remission or mitigation.

4. The court may have accepted the Government's argument regarding legal ownership, but as discussed *infra*, the court went beyond the contentions of the parties in holding that the mere fact that Charles was driving the Blazer with Steven's consent made forfeiture proper.

of a vehicle has "the right to possession" and is "transporting contraband" at the time of arrest and seizure, the vehicle may be declared forfeited.[5] The court acknowledged that this was a harsh rule, but nevertheless deemed itself bound by it because the law required "the person who relinquishes possession of the car to know more about his buyer, to know more about his lessee, to know more about the person to whom he loaned the car . . .". Reporter's Transcript 8.

### Forfeiture Law

The Supreme Court has long "recognized the difficulty of reconciling the broad scope of traditional forfeiture doctrine with the requirements of the Fifth Amendment". *United States v. United States Coin & Currency*, 401 U.S. 715, 721, 91 S.Ct. 1041, 1044, 28 L.Ed.2d 434 (1971) (citing, *inter alia, Goldsmith-Grant Co. v. United States*, 254 U.S. 505, 41 S.Ct. 189, 65 L.Ed. 376 (1921)). In *Coin & Currency*, while recognizing that "centuries of history support the Government's claim that forfeiture statutes . . . have an extraordinarily broad scope" and that forfeiture may be imposed upon the property of innocent persons, the Court suggested that if it "were writing on a clean slate", the claim that the statute in question "operat[ed] to deprive totally innocent [persons] of their property would hardly be compelling". 401 U.S. at 719, 91 S.Ct. at 1043. The Court decided, however, that it need not consider the constitutionality of the forfeiture statute at issue because the Government's action failed on other grounds, and that the statute "cannot be understood without considering the terms of the other statutes which regulate forfeiture proceedings". *Id.* at 721, 91 S.Ct. at 1044. In particular, the court pointed to 19 U.S.C. § 1618, which "permits the innocent owner to prove to the Secretary of the

Treasury that the 'forfeiture was incurred without willful negligence or without any intention on the part of the petitioner . . . to violate the law . . . .'"[6] The Court concluded: "When the forfeiture statutes are viewed in their entirety, it is manifest that they are intended to impose a penalty only upon those who are significantly involved in a criminal enterprise." *Id.* at 721–722, 91 S.Ct. at 1045.

Subsequently, in *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), the Court made it clear that in *Coin & Currency* it had not overruled prior decisions that had sustained the application of forfeiture statutes to the property of innocent claimants. *Id.* at 688, 94 S.Ct. 2080. But, the Court continued:

This is not to say, however, that the "broad sweep" of forfeiture statutes remarked in *Coin & Currency* could not, in other circumstances, give rise to serious constitutional questions. . . . It therefore has been implied that it would be difficult to reject the constitutional claim of an owner whose property subjected to forfeiture had been taken from him without his privity or consent. (citations omitted) Similarly, the same might be said of an owner who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property; for, in that circumstance, it would be difficult to conclude that the forfeiture served legitimate purposes and was not unduly oppressive. *Id.* at 688–90, 94 S.Ct. at 2094–2095.

The Court concluded, however, in *Pearson Yacht Leasing*, that the lessor of a yacht in which contraband was discovered was properly denied remission because it

---

**5.** The court said in part: "It would make no difference whether he was merely a lessee from Hertz Rent-A-Car or whether he was a conditional sales purchaser or whether he had borrowed the car." Reporter's Transcript 7.

**6.** The Court continued: "Upon this showing, the Secretary is authorized to return the seized property 'upon such terms and conditions as he deems reasonable and just'. It is not to be presumed that the Secretary will not conscientiously fulfill this trust, and the courts have intervened when the innocent petitioner's protests have gone unheeded." 401 U.S. at 721, 91 S.Ct. at 1045.

had "voluntarily entrusted the lessees with possession of the yacht, and no allegation has been made or proof offered that the company did all that it reasonably could to avoid having its property put to an unlawful use".[7] *Id.* at 690, 94 S.Ct. at 2095. It is clear that to obtain remission or mitigation of forfeiture, the claimant has the burden of proving that he exercised due care in entrusting another with possession of his property.[8]

In *United States v. One 1972 Mercedes-Benz 250, etc.,* 545 F.2d 1233 (9 Cir. 1976) this court, in affirming a judgment of forfeiture, noted the decisions of the Supreme Court in *Coin & Currency* and *Pearson Yacht Leasing,* saying in part:

> In both cases the law is reaffirmed to the effect that statutory forfeitures are not unconstitutional because they enmesh the property interests of innocents. . . .
> But as was further noted in *Pearson Yacht Leasing,* there are indications that serious constitutional problems could arise where the claimant can prove that he was uninvolved and unaware of the unlawful activity and not guilty of any negligence which permitted it. . . .
> Here, the uncertainty of the facts to support the petition to mitigate so fogs the equities that we remain unpersuaded by appellant's claim that the Attorney General's action was erroneous.[9] *Id.* at 1236.

In *One 1972 Mercedes-Benz,* we also recognized the validity and applicability of 19 U.S.C. § 1618. We concluded, "The appel-

lant's problem is that he simply did not establish to the Attorney General's reasonable conviction that he is within it. *Cf. United States v. One 1974 Mercury Cougar XR7,* 397 F.Supp. 1325 (C.D.Cal.1975)." *Id.* at 1237.

In *Wiren v. Eide,* 542 F.2d 757 (9 Cir. 1976), this court also considered the effect of *Pearson Yacht Leasing* with respect to the claim of an innocent party to a vehicle which was subject to forfeiture. Holding that the bond requirement in 19 U.S.C. § 1606 operated unconstitutionally to deprive the appellant of an opportunity for a hearing on the merits of his claim, we returned the case to the district court for consideration and disposition. *Id.* at 764. We noted that it was for the district court to consider whether the claimant had voluntarily surrendered possession of the vehicle to the culpable party, whether he knew of the party's possession of the contraband, and, if he did not know, whether his ignorance was reasonable. After taking evidence on these factual issues, the district court can determine whether the general rule of forfeiture properly should apply to the subject vehicle. *Id.* at 764–65 n.9.

We are unable to determine from the record whether appellant's claim was ever given the administrative consideration required by 19 U.S.C. § 1618. The Government states that his claim was "in the nature of a petition for remission which was duly denied by the United States of America".[10] We note that the Claim of Owner

---

**7.** The Court recognized that "To the extent such forfeiture provisions are applied to lessors, bailors, or secured creditors who are innocent of any wrongdoing, confiscation may have the desirable effect of inducing them to exercise greater care in transferring possession of their property." 416 U.S. at 687–688, 94 S.Ct. at 2094.

**8.** 19 U.S.C. § 1615 expressly places this burden upon the claimant in a forfeiture action. The constitutionality of this statute was upheld in *United States v. One 1970 Pontiac GTO,* 529 F.2d 65 (9 Cir. 1976).

**9.** The court concluded that although some of the reasons in the letter denying remission "might be subject to question, the Attorney General through his delegate did accept juris-

diction and authority to conduct an investigation, and made his determinations on the basis of the facts developed. It is well established that under these circumstances the Attorney General's denial of a request for remission is not reviewable." 545 F.2d at 1236.

**10.** While there is some uncertainty with respect to the extent of the district court's jurisdiction to review an administrative denial of remission, this court held in *Simons v. United States,* 497 F.2d 1046, 1049 (9 Cir. 1974): "While the Secretary has been given sole power to mitigate the effects of proper forfeiture, he has not been given sole power to determine the propriety of the forfeitures themselves." As noted *supra,* note 6, the Court in *Coin and Currency* suggested that the courts would have

was not in the form required by 28 C.F.R. § 9.3. On the other hand, if the Government did view the claim as a proper petition, then apparently the Government failed to afford it the full investigation, fact development and written reasons for denial provided for in 28 C.F.R. § 9.3 *et seq.* Those regulations provide, *inter alia,* that the Government should consider whether the claimant had established "a valid good faith interest in the seized property" and that he had no "knowledge or reason to believe that the property . . . was being or would be used in violation of the law". 28 C.F.R. § 9.5(c)(1), (2).

The appellant in his affidavit-claim of owner stated facts which partially justified his claim of an interest in the Blazer. In his signed answer, he alleged that he did not condone or know of his father's illegal activities. During the oral argument, in response to questions from the bench, counsel for appellee acknowledged that the Government did not contend that appellant was himself involved in criminal activity or that he was aware of his father's conduct, or even that he was negligent in not becoming aware of the illegal activity. The Government relied solely on the fact of appellant's father having legal title to the Blazer at the time of his arrest and the seizure of the vehicle.

### Recognition of Actual or Equitable Ownership

■ The Government argues that at the time of the seizure appellant's father, as a matter of law, "was for all purposes the legal and registered owner as a result of the failure to comply with West's Ann.California Vehicle Code Section 5600".[11] The California courts, however, have held that the transfer of property interests may be valid as between the parties and for certain purposes without complying with Section 5600. As the court said in *Security Pacific National Bank v. Goodman,* 24 Cal.App.3d 131, 100 Cal.Rptr. 763 (Ct.App.1972), "It has long been established that a transfer of the property interest in a motor vehicle is effective as between the immediate parties even though they have not complied with the registration statute".[12] 100 Cal.Rptr. at 767.

In *Stoddart v. Peirce,* 53 Cal.2d 105, 346 P.2d 774 (1959), a personal injury action, the court said: "Another example of language which should not be construed in a strict or literal sense is found in section 186 [now 5600]." 346 P.2d at 780. The court expressly recognized the passing of "equitable title" as distinguished from "legal title". See also *People v. Aiken,* 222 Cal.App.2d 45, 34 Cal.Rptr. 828 (Ct.App.1963).

Under the remission statute, 19 U.S.C. § 1618, "[a]ny person interested" in the vehicle may petition for remission. Among the prerequisites for remission is the petitioner's showing that he has a "valid, good faith interest in the seized property". 28 C.F.R. § 9.5(c)(1) (1976). We conclude that if appellant can establish that he was the actual (as between the parties) or equitable owner of the vehicle at the time of the seizure, he was entitled to petition for remission.[13]

---

authority to intervene "when the innocent petitioner's protests have gone unheeded".

11. Section 5600 of the California Motor Vehicle Code (formerly Section 186) provides that no transfer of the title or any interest in a vehicle registered under the Code shall pass and any attempted transfer shall be ineffective until the transferor has delivered the certificate of ownership to the transferee or has delivered or mailed the transfer documents to the department.

12. *Goodman* involved a transfer or "entrustment" of possession under the Uniform Commercial Code.

13. *Simons v. United States, supra,* note 10, involved forfeiture of an automobile used to transport a contraband firearm. Following remand, the pleadings were amended and evidence was produced with respect to claimant's interest in the vehicle on the date it was forfeited. It developed that on the date of seizure, the claimant "had no claim of any interest in the automobile, legal or equitable", and the court held that he could not "enforce against the government his after-acquired rights". *Simons v. United States,* 541 F.2d 1351, 1352 (9 Cir. 1976). It will be necessary for the district court to determine in this case on the basis of

*Conclusion*

Under these circumstances, we hold that the court erred in not affording appellant the opportunity to fully present his claim of ownership of the Blazer and carry his burden of showing that he had done everything he reasonably could to avoid having the vehicle put to an unlawful use. We express

the evidence produced whether appellant was in fact the actual or equitable owner of the vehicle on the date of seizure.

14. This may include a consideration of the adequacy of the remission proceedings under 19

no views on the merits of appellant's claim. We only conclude that appellant has put forward a claim which requires a fuller evidentiary hearing than was permitted by the district court.[14] Therefore, we reverse the order granting the Government's motion for summary judgment and remand to the district court for further proceedings consistent with this opinion.

U.S.C. § 1618 and applicable regulations as well as the propriety of the forfeiture. See *Simons v. United States*, 497 F.2d 1046 (9 Cir. 1974).