**UNITED STATES of America, Plaintiff,**

**v.**

**ONE (1) 1980 STAPELTON PLEASURE VESSEL NAMED THREESOME, REGISTRATION NO. FL4180EA, together with its tackle, apparel and equipment, Defendant.**

**No. 82–1716–Civ–CA.**

United States District Court, S.D. Florida.

Oct. 11, 1983.

---

**1.** The court in *Laswell* noted that their holding does not preclude an action based upon a truly independent, post-service tort.

B.B. Allen, Asst. U.S. Atty., Miami, Fla., for plaintiff.

Richard Bergstresser, Miami, Fla., for defendant.

## FINDINGS OF FACTS AND CONCLUSIONS OF LAW

ATKINS, District Judge.

Plaintiff seeks forfeiture of the defendant vessel pursuant to 21 U.S.C. § 881 (1981) and 49 U.S.C. § 782 (1963). Thomas O. Duckworth and John C. Riley claim ownership of the defendant vessel and contest its seizure. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355 (1976).

## FINDINGS OF FACTS

1. Thomas O. Duckworth and John C. Riley hold title to the defendant vessel as evidenced by Florida boat title and registration certificates.

2. Duckworth and Riley insured the defendant vessel with the Insurance Company of North America. The yacht policy coverage listed them as the named assureds. The policy provided liability coverage as well as coverage for damage or loss to the defendant vessel. The policy took effect on June 26, 1981.

3. The defendant vessel was berthed at Rolly Marine Service, Inc. from June 19, 1981 to October 21, 1981. The Rolly Marine Service, Inc. dockage agreement lists Tom Duckworth as the owner of the defendant vessel.

4. In July through September 1981, Rolly Marine Service, Inc. repaired and painted the defendant vessel. Rolly Marine's invoice and statement balance, dated September 16, 1981, names Duckworth as the individual responsible for payment. The statement shows an unpaid balance of $2476.38.

5. In a letter dated October 21, 1981 and addressed to Duckworth and Riley, the Insurance Company of North America rejected a claim for the $2476.38 repair costs.

6. In September or early October 1981, Duckworth let it be known that he was interested in selling the defendant vessel. A Dennis Wilson, a man Duckworth had met once before and who Duckworth knew as "Captain Bob" expressed an interest in the defendant vessel. Duckworth offered to sell it for $70,000. Wilson suggested that he be permitted to give a deposit and take the defendant vessel for a period of time. If Wilson found the boat to be satisfactory, he would pay the remainder of the $70,000 sale price.

7. Duckworth agreed but wanted some form of receipt for the vessel. To this end, Duckworth had his attorney draft a yacht charter party agreement. The charter agreement provided that Wilson would lease the vessel for pleasure for the sum of $10,000 cash. The charter agreement did not designate the date on which the charter would terminate, nor did it mention the sale agreement. Wilson took possession of the defendant vessel on October 21, 1981.

8. Unknown to Duckworth, the name "Dennis Wilson" was an alias used by Robert Gary Sells. Sells has been previously arrested for possession of 24,640 pounds of marihuana.

9. Duckworth did not request that "Wilson" produce identification nor did he inquire of local police agencies about "Wilson".

10. On October 25, 1981, the Coast Guard received a call for assistance from the defendant vessel. The Coast Guard informed the vessel that it could not assist until the vessel entered U.S. territorial limits. After the defendant vessel entered U.S. waters, two Coast Guard vessels escorted it to the Islamorada Coast Guard Station.

11. The defendant vessel had been involved in a shooting incident near Andros Island, Bahamas. During the shooting incident, the defendant vessel was damaged and Wilson a/k/a Sells was fatally wounded. Also, one Bahamian was killed and another wounded.

12. Paul James Cates, Anthony George Ventsias, and the body of Wilson a/k/a Sells were aboard the defendant vessel when it arrived at Islamorada on October 25, 1981.

13. An autopsy performed on the body of Wilson a/k/a Sells uncovered traces of marihuana.

14. Because of the possibility that the shooting incident was related to drug trafficking and because the vessel came from foreign waters, the Coast Guard notified the Customs Service. The Coast Guard also notified the FBI and the local sheriff's department.

15. After FBI Agent Kelly questioned Cates and Ventsias about the shooting incident and heard conflicting stories concerning whether Wilson returned the fire of the Bahamians, he granted Customs Agent Thomas Arnold permission to search the defendant vessel. Customs Agent Arnold did not attempt to obtain a warrant.

16. Customs Agent Arnold found approximately two grams of marihuana residue under and around the carpets in the forward section of the defendant vessel.

17. On October 26, 1981, Customs Agent Arnold seized the defendant vessel. On November 12, 1981, the Customs Service mailed a notice of seizure to Duckworth and Riley pursuant to 19 U.S.C. § 1618 and 19 C.F.R. 162.31. On December 5, 1981, Duckworth and Riley petitioned the Customs Service for remission and waived prompt referral of the matter to a United States attorney. On February 2, 1982, the Customs Service referred the petition to the Patrol Office for investigation. On April 22, 1982, Duckworth and Riley demanded prompt reference of the matter to a United States attorney. On May 27, 1982, the Customs Service referred the matter to regional counsel. On July 14, 1982, regional counsel referred the matter to United States Attorney Stanley Marcus.

On August 12, 1982, this forfeiture suit was filed.

18. At the trial of this cause, Customs Agent Arnold provided the sole testimony in the government's behalf. Agent Arnold testified, in part, as to his discovery of the two grams of marihuana residue in the forward section of the defendant vessel and his field test of the marihuana. The government could not produce the marihuana residue at the trial because it had been destroyed on March 10, 1982 pursuant to a Customs Service "Order to Destroy and Record of Destruction of Forfeited, Abandoned, or Unclaimed Merchandise." The "Record of Destruction" was not signed by any customs officer or witness.

## CONCLUSIONS OF LAW

■ 1. A forfeiture proceeding is an *in rem* action brought against seized property pursuant to the fiction that the property itself is guilty of facilitating crime. *See Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 680–84, 94 S.Ct. 2080, 2090–92, 40 L.Ed.2d 452 (1974).

■ 2. To contest a forfeiture action, an individual must first demonstrate an interest in the seized property sufficient to satisfy the court of his standing as a claimant. *United States v. Three Hundred Sixty Four Thousand Nine Hundred Sixty Dollars ($364,960) in U.S. Currency*, 661 F.2d 319, 326 (5th Cir.1981). The owner of the seized property may have an interest sufficient to establish standing. *United States v. One 1945 Douglas C–54 (DC–4) Aircraft*, 647 F.2d 864, 866 (8th Cir.1981) (hereinafter cited as *Douglas Aircraft, Appeal 2* ). In general terms, ownership may be defined as a possessory interest in the seized property from which flows the right to exercise dominion and control. *United States v. One 1945 Douglas C–54 (DC–4) Aircraft*, 604 F.2d 27, 28 (8th Cir.1979) (hereinafter cited as *Douglas Aircraft, Appeal 1* ). Ownership may be established by

proof of actual possession, control, title or financial stake. *Douglas Aircraft, Appeal 2*, 647 F.2d at 866. The possession of bare legal title to the seized property, however, by one who does not control and exercise dominion over the property is insufficient to establish ownership. *Douglas Aircraft, Appeal 1*, 604 F.2d at 28.

■ 3. Duckworth and Riley have demonstrated an interest in the defendant vessel sufficient to satisfy this Court of their standing as claimants to contest the forfeiture. The Florida boat title and registration certificates, the insurance policy, and the charter agreement, among other documents, demonstrate that Duckworth and Riley are the owners of the defendant vessel. No evidence was produced to indicate that they are merely "nominal owners".

■ 4. In a forfeiture proceeding, the government bears the initial burden of proof as it must show probable cause for the institution of the suit. 21 U.S.C. § 881(d) (1981) *, 49 U.S.C. § 784 (1963) **, *United States v. One 1971 Chevrolet Corvette Automobile*, 496 F.2d 210, 212 (5th Cir.1974).

■ 5. Probable cause is defined as a reasonable ground for belief of guilt supported by less than prima facie proof but more than mere suspicion. *United States v. One 1978 Chevrolet Impala*, 614 F.2d 983, 984 (5th Cir.1980), *United States v. One 1975 Ford F100 Pickup Truck*, 558 F.2d 755, 756 (5th Cir.1977), *United States v. One 1971 Chevrolet Corvette Automobile*, 496 F.2d 210, 212 (5th Cir.1974).

■ 6. The government had probable cause to seize the defendant vessel and institute this forfeiture suit. Probable cause was predicted on the defendant vessel's involvement in a shooting incident, the discovery of marihuana residue in the vessel and in the body of Sells, and Sells' prior arrest for marihuana trafficking.

* Section 881(d) makes the probable cause standard of 19 U.S.C. § 1615 (1980) applicable to forfeiture suits under section 881(a)(6).

** Section 784 makes the probable cause standard of 19 U.S.C. § 1615 (1980) applicable to forfeiture suits under section 782.

7. The testimony of Customs Agent Arnold was sufficient to establish that the substance uncovered by the search of the vessel was marihuana. Production of the marihuana was not crucial. Moreover, a chemist's report was not required as it would merely be cumulative evidence. *See United States v. One 1972 Wood, 19 Foot Custom Boat,* 501 F.2d 1327, 1329 (5th Cir.1974).

■ 8. Once the government establishes probable cause, the burden of proof shifts to the claimant to prove a defense to the forfeiture. 19 U.S.C. § 1615 (1980), *United States v. One 1975 Ford F100 Pickup Truck,* 558 F.2d 755, 756 (5th Cir. 1977), *United States v. One 1971 Chevrolet Corvette Automobile,* 496 F.2d 210, 212 (5th Cir.1974). The claimant must prove a defense by a preponderance of the evidence. *Ford F100 Pickup Truck,* 558 F.2d at 756.

■ 9. "Innocence [of the claimant], in and of itself, is an insufficient defense to forfeiture." *United States v. One 1957 Rockwell Aero Commander 680 Aircraft,* 671 F.2d 414, 417 (10th Cir.1982), *see also Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 683–90, 94 S.Ct. 2080, 2091–95, 40 L.Ed.2d 452 (1974). To prevail on the defense of innocence, a claimant must establish that 1) he was not involved in the wrongful activity, 2) he was not aware of the wrongful activity, and 3) he had done all that reasonably could be expected to prevent the proscribed use of his property. *Pearson Yacht Company,* 416 U.S. at 689, 94 S.Ct. at 2094.

■ 10. The claimants failed to establish the defense of innocence by a preponderance of the evidence. They did not do all that reasonably could be expected to prevent the proscribed use of their property. They never requested that Wilson a/k/a Sells produce identification. They never inquired of local law enforcement agencies about him. Inquiries of community members as to Sells' reputation in the community were superficial and cursory at best. "To the extent that ... forfeiture provisions are applied to lessors, bailors, or secured creditors who are innocent of any wrongdoing, confiscation may have the desirable effect of inducing them to exercise greater care in transferring possession of their property." *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. at 687–88, 94 S.Ct. at 2094.

■ 11. To determine whether the government's delay in filing a civil forfeiture action violated the claimants' right against deprivation of property without due process of law, the Court must weigh the following elements: a) the length of the delay, b) the reason given by the government for the delay, c) the claimants' assertion of their right to a judicial hearing, and d) prejudice to the claimants because of the delay. *United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in United States Currency,* —— U.S. ——, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983).

■ 12. The government's ten month delay in instituting this forfeiture action did not violate the claimants' right against deprivation of property without due process of law. Nearly seven months of the delay was attributable to the petition for remission filed by the claimants. "An important justification for delaying the initiation of forfeiture proceedings is to see whether the Secretary's decision on the petition for remission will obviate the need for judicial proceedings." *United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in United States Currency,* —— U.S. at ——, 103 S.Ct. at 2013. The government acted promptly once the claimants demanded reference of the matter to a United States attorney.

13. In addition, claimants failed to show that they had been prejudiced by the delay. The central focus of this factor is whether the delay has hampered the claimants "in presenting a defense on the merits, through, for example, the loss of witnesses or other important evidence." *Id.* at ——, 103 S.Ct. at 2014. Although the claimants allege prejudice because of the destruction

of the two grams of marihuana discovered in the defendant vessel, production of the marihuana at trial would have merely corroborated the testimony of Customs Agent Arnold.

14. The exclusionary rule applies in forfeiture proceedings, so probable cause for forfeiture cannot rest upon tainted evidence. *United States v. One 1979 Mercury Cougar XR-7*, 666 F.2d 228, 230 (5th Cir.1982).

15. Searches at our borders by customs agents without probable cause and without a warrant are reasonable and therefore do not violate the Fourth Amendment. *United States v. Ramsey*, 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977).

16. Customs Agent Arnold was not required to obtain a warrant to search the defendant vessel which entered the United States ocean border from foreign waters.

17. The defendant vessel was used to transport, conceal, possess and facilitate the transportation, concealment, possession and sale of a contraband article, namely marihuana, a controlled substance within the meaning of 21 U.S.C. §§ 881(a)(1) and 812 (1981).

18. The defendant vessel is subject to seizure and forfeiture under 21 U.S.C. § 881 (1981) and 49 U.S.C. § 782 (1963). The claimants established no defenses to the forfeiture. Plaintiff United States of America is entitled to judgment of forfeiture.