**UNITED STATES of America, Plaintiff,**

**v.**

**ONE 1981 DATSUN 280ZX VIN: JN1HZ04S4BX407742, Defendant.**

**Civ. A. No. 85–5396.**

United States District Court, E.D. Pennsylvania.

Aug. 19, 1986.

Charisse R. Lillie, Asst. U.S. Atty., Philadelphia, Pa., for plaintiff.

Mitchell Kisner, Neill Irene Meckley, Vineland, N.J., for defendant vehicle and claimant Robert J. Bogol.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SHAPIRO, District Judge.

This is an action brought by the United States of America in which the Government seeks forfeiture of an automobile allegedly used in a transaction involving a controlled substance in violation of federal law. Such forfeiture is authorized by 21 U.S.C.A. § 881(a)(4) (West 1981) and 49 U.S.C.A. § 782 (West 1963). The registered owner of the defendant vehicle, Robert J. Bogol, has appeared as a claimant in this action. The case was tried to the court, and the court now enters judgment in favor of Mr. Bogol and the defendant vehicle. The following constitute the findings of fact and conclusions of law required by Fed.R.Civ.P. 52.

### Findings of Fact

In early August, 1984, claimant Robert J. Bogol lived in Elmer, New Jersey, with his wife, Janet Bogol, and their two daughters, Roxanne and Shelly Bogol.[1] All four members of the Bogol household were adults who could drive automobiles. Mr. Bogol then owned four or five cars, all of which were licensed and insured, except for one car which could not be driven. These were the only cars owned by any member of the household.

Mr. Bogol was employed as a master maintenance mechanic by the West Company of Nebraska, Inc., and Mrs. Bogol served as a court clerk for the Township of Penn's Grove. In 1983 Mr. Bogol earned an adjusted gross income of $26,880.54. In 1984 Mr. and Mrs. Bogol earned a combined adjusted gross income of $33,663.65.

In August, 1984, Roxanne Bogol had just become an employee of the Ancora Psychiatric Hospital, near Hammonton, New Jersey, approximately 45 minutes' driving time from the Bogol residence. Roxanne Bogol used one of her father's cars for transportation to and from work, but frequently experienced mechanical difficulties with the car; this necessitated Mr. Bogol's driving to Roxanne Bogol's workplace after he got home from his job. Mrs. Bogol used another of her husband's cars for transportation to and from work, and that car was also in relatively poor condition.

Because of the problems with these two cars, Mr. Bogol decided to purchase an additional car to be used by that member of the family who had to drive the furthest; that was then Roxanne Bogol. Janet and Roxanne Bogol looked at cars which Mr. Bogol might purchase. On August 13, 1984, Janet and Roxanne Bogol placed a $100.00 deposit on a used white 1981 Datsun 280ZX, VIN: JN1HZ04S4BX407742, the defendant vehicle in this action, at Woodbury Datsun, Inc., in Woodbury, New Jersey. The deposit money was provided by Janet Bogol but the receipt was given in the name of Roxanne Bogol. The final decision on the purchase was to be made by Mr. Bogol.

On August 15, 1984, Mr. Bogol paid an additional $2,500.00 in cash to Woodbury Datsun, Inc., to hold the car until a final price was agreed upon and paid. A receipt was issued in Roxanne Bogol's name only because her name was on the original deposit slip; she was not present when Mr. Bogol paid the $2,500.00. Mr. Bogol had obtained $2,200.00 of that sum by cashing a check made out to him by his wife; the remaining $300.00 was cash saved by Mr. Bogol at his home.

---

**1.** During the summer and fall of 1984 on many occasions Roxanne Bogol stayed at the home of her boyfriend, Henry Garrison, in Westville Grove, New Jersey.

Within a week Woodbury Datsun, Inc. agreed to sell the Datsun to Mr. Bogol for $8,070.00 in addition to the money already paid, plus a trade-in of one of Mr. Bogol's cars valued at $1,900.00. Mr. Bogol then told Roxanne Bogol that he would need to borrow approximately $2,000.00 or less to pay for the car and he preferred to borrow the money from her.

While she was a minor, Roxanne Bogol had recovered approximately $8,000.00 pursuant to a civil judgment. That money had been placed in an account with the brokerage firm of Dean Witter Reynolds, Inc. in Vineland, New Jersey. Mr. Bogol's name had appeared on the account with that of Roxanne Bogol until she had his name removed in April, 1984. On August 22, 1984, she closed the account and received a check for $6,248.52 from the brokerage firm. In part because no bank would cash her check, Roxanne Bogol deposited this money into her parents' checking account.

On August 22, 1984, Mr. Bogol purchased the Datsun. He paid $2,070.00 in cash that he had saved, and wrote a check for $6,000.00 drawn on the checking account that he and his wife maintained, into which Roxanne Bogol's check had been deposited. He also made the trade-in. Without the deposit by Roxanne Bogol, there would have been insufficient funds in the checking account to cover Mr. Bogol's check. A receipt was issued by Woodbury Datsun, Inc. in Roxanne Bogol's name, again only because the original deposit slip was in her name. Only Mr. Bogol is listed as a buyer on the bill of sale for the Datsun, and the car's title was and is registered solely in his name. On October 9, 1984, Mr. and Mrs. Bogol paid the $860.00 insurance premium on the Datsun. There is no evidence that title to the car was placed in Mr. Bogol's name to reduce the insurance premium, nor that he could obtain a lower premium than Roxanne Bogol could.

In late 1979 or early 1980, Mr. Bogol had given $5,000.00 in cash to his half-sister, Catherine Jean Orange, to be held until various contingencies occurred or Mr. Bo-

gol directed otherwise. Both Mr. Bogol and Ms. Orange believed in keeping large sums of money on hand; he had accumulated this cash over many years. Although he previously had had savings accounts, Mr. Bogol had no such account in August, 1984.

On August 22, 1984, Mr. Bogol telephoned Ms. Orange and told her that Roxanne would come to Ms. Orange's home, in Bridgeton, New Jersey, to get the $5,000.00. Shortly after midnight on August 23, 1984, Roxanne Bogol got the money from Ms. Orange's home. Mr. Bogol gave this money to Roxanne Bogol to pay her back for most of her money from Dean Witter Reynolds, Inc., that had been deposited in his and his wife's checking account.

Roxanne Bogol picked up the Datsun from the car dealer after it was purchased. The Bogol family anticipated that she would have primary use of the Datsun until around Christmas, 1984, when she was expected to have enough money to buy her own car. When Roxanne Bogol purchased her own car, the Datsun was to be used primarily by Janet Bogol; Mr. Bogol was to pay Roxanne Bogol the remainder of the money owed to her for the money from Dean Witter Reynolds, Inc. deposited in her parents' checking account.

In the months following the purchase of the Datsun, the car was driven primarily by Roxanne Bogol but it was also driven by Robert Bogol. Roxanne Bogol also used the Datsun to give driving lessons to Janet Bogol. In November, 1984, Roxanne Bogol moved in with her boyfriend, Henry Garrison, but she still visited her parents' home.

At approximately 4:50 p.m. on November 27, 1984, Supervisory Special Agent Henry J. Sweeney of the Philadelphia office of the Federal Bureau of Investigation received a telephone call from a confidential informant known to him to be an informant for the F.B.I. The informant alleged the following:

Two individuals from New Jersey had traveled to Philadelphia and were currently inside of the building at 402 Jackson Street. One individual was named

Henry, and was a white male; the other person (who was not named by the informant) was Henry's girlfriend, and had blond hair. The two individuals were awaiting delivery of methamphetamine, which they were going to take back to New Jersey. The two individuals had arrived in a white sports car with a New Jersey license plate that was parked on the southwest corner of 4th and Jackson Streets. They had brought $5,000.00 with them and turned it over to a man named Cook, who had then left to pick up the methamphetamine, and who would return at 6:15 p.m. Cook was a white male, walking, wearing a white jacket, and had a stocky build and red hair. Based on this information, Mr. Sweeney took several F.B.I. agents and at 5:30 p.m. instituted surveillance at 402 Jackson Street. Upon their arrival, the agents observed a white 1981 Datsun 280X, the defendant vehicle in this action, New Jersey license plate 339ZCE, parked at the southwest corner of 4th and Jackson. By radio Mr. Sweeney learned that the Datsun was registered to Robert J. Bogol of Elmer, New Jersey.

At 6:10 p.m., Mr. Sweeney and the other agents then saw a white male with "bright" hair and a stocky build, wearing a jacket, walk down Jackson Street carrying a brown lunch bag and go into the building at 402 Jackson Street. At 6:27 p.m., this same individual left the building without the brown lunch bag. At 6:40 p.m., the F.B.I. office conveyed to Mr. Sweeney the informant's report that Cook had delivered a quantity of methamphetamine in a brown lunch bag. The informant had also said that Henry's girlfriend would be leaving 402 Jackson Street shortly with two other white males and that they would drive away together. At 6:45 p.m., the agents saw two white males and a white female later identified as Roxanne Bogol leave the building at 402 Jackson Street, get into the Datsun, and drive away. The agents followed the Datsun onto Broad Street, where traffic was heavy and the agents were in danger of "losing" the Datsun. The agents stopped the Datsun, which Roxanne Bogol was driving, and recovered a brown lunch bag from her pocketbook. The agents arrested Roxanne Bogol and seized the Datsun. The contents of the brown lunch bag were tested and proved to be approximtely 103 grams of methamphetamine.[2] The Datsun has remained in the custody of the F.B.I.

Prior to her arrest on November 27, 1984, Roxanne Bogol had no criminal record and had never been arrested. Mr. Bogol had never known her to use any illicit drugs[3] nor to be involved in any transaction involving such drugs. Roxanne Bogol had Mr. Bogol's permission to use the Datsun but her father had no advance knowledge of Roxanne Bogol's plans for November 27, 1984, and had no reason to believe that either his daughter or the Datsun would be involved in any illegal activity.

Upon her arrest, Roxanne Bogol told at least one F.B.I. agent that the Datsun belonged to her. She did not believe it to be true but said this to prevent her parents' learning about the events of November 27, 1984. She hoped to recover the car from the F.B.I. before her parents knew of its seizure.

Mr. Bogol is the sole legal and equitable owner of the car. He paid for the car. He had title to the car and he (and his wife) paid the insurance premiums. Mr. Bogol had the right to use or dispose of the car whenever he chose. Roxanne Bogol was neither a legal or equitable owner of the Datsun.

Roxanne Bogol stopped working at the Ancora Psychiatric Hospital in November or December, 1984. Around Christmas, 1984, Mr. and Mrs. Bogol lost contact with Roxanne Bogol. Mr. Bogol went to Henry

---

**2.** Claimant stipulates that 103 grams of methamphetamine were found in a brown lunch bag in the Datsun.

**3.** Roxanne Bogol has a health condition which necessitates frequent medical examinations that probably would reveal illicit drug use.

Garrison's apartment to take possession of the Datsun but neither the car nor his daughter was there. Mr. Bogol "staked out" the apartment for a week but saw no sign of Roxanne Bogol or the Datsun. He and his wife tried to call Roxanne Bogol at Mr. Garrison's apartment on numerous occasions, but she was never there.

In late February, 1985, Mrs. Bogol sent Roxanne Bogol a note by certified mail. The note made no reference to the Datsun because Roxanne Bogol's parents were concerned primarily with her welfare and whereabouts rather than the car. Mr. Bogol first learned that the Datsun had been seized on April 4, 1985, when he received a letter from the F.B.I.

On April 18, 1985, Mr. Bogol filed an administrative petition for remission or mitigation of forfeiture with the F.B.I. The petition alleged, *inter alia,* that Mr. Bogol was the owner of the Datsun, that he had purchased it, that he and his wife had paid for the insurance on the car, and that he had had no knowledge or reason to believe that either his daughter or the automobile were involved in any illegal activity until he received the letter from the F.B.I. The petition was accompanied by a 10% cost bond in the amount of $1,062.50 pursuant to 19 U.S.C.A. § 1608 (West Supp.1986). Decision on the petition has been held in abeyance pending disposition of this civil action filed on September 18, 1985.

## Discussion

Forfeiture of an automobile used in a transaction involving a controlled substance in violation of federal law is authorized by 21 U.S.C.A. § 881(a)(4) (West 1981) and 49 U.S.C.A. § 782 (West 1963). Title 21 U.S.C.A. § 881(a) (West 1981 and Supp. 1986) provides:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

(1) All controlled substances which have been manufactured, distributed, dispensed, or acquired in violation of this subchapter.

. . . .

(4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession or concealment of property described in paragraph (1) ..., except that—
. . . .

(B) no conveyance shall be forfeited under the provisions of this action by reason of any act or omission established by the owner thereof to have been committed or omitted by any person other than such owner while such conveyance was unlawfully in the possession of a person other than the owner in violation of the criminal laws of the United States, or of any State.

Title 49 U.S.C.A. § 782 (West 1963) states:

Any vessel, vehicle, or aircraft which has been or is being used in violation of any provision of section 781 of this title [Unlawful Use of Vessels, Vehicles, and Aircrafts], or in, upon, or by means of which any violation of said section has taken or is taking place, shall be seized and forfeited: ... *Provided further,* That no vessel, vehicle, or aircraft shall be forfeited under the provisions of this chapter by reason of any act or omission established by the owner thereof to have been committed or omitted by any person other than such owner while such vessel, vehicle, or aircraft was unlawfully in the possession of a person who acquired possession thereof in violation of the criminal laws of the United States, or of any State.

Forfeiture of an automobile under each of these statutes is governed by all provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of a vehicle for violation of the customs laws. 21 U.S.C.A. § 881(d) (West Supp. 1986); 49 U.S.C.A. § 784 (West 1963).

The burden of proof in this action is provided by the customs laws.

In all suits or actions ... brought for the forfeiture of any ... vehicle ... where the property is claimed by any person, the burden of proof shall lie upon such

claimant; ... *Provided,* That probable cause shall be first shown for the institution of such suit or action, to be judged of by the court....

19 U.S.C.A. § 1615 (West 1980 and Supp. 1986). The Government therefore bears the initial burden of proving that it had probable cause for the institution of this action.

■ The Government has shown that it had probable cause to seize the defendant vehicle on November 27, 1984. The F.B.I.'s prior contact with the confidential informant involved in this case established a basis for belief in the reliability of the informant. The information provided by the informant was highly detailed and was confirmed by the observations of the agents who engaged in surveillance of the building at 402 Jackson Street. Exigent circumstances justified an immediate seizure of the defendant vehicle. In the totality of the circumstances, the agents clearly had probable cause to seize and search the defendant vehicle and Roxanne Bogol. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

■ The Government has also shown that it had probable cause to institute this action on September 18, 1985. The substance found in Roxanne Bogol's purse on November 27, 1984 was tested and proved to be 103 grams of methamphetamine. Although Mr. Bogol's petition for remission or mitigation of forfeiture filed on April 18, 1985 might have given the Government reason to consider that he was an innocent owner, his claim to the vehicle does not negate the existence of probable cause to seize the defendant vehicle because it was used in a drug transaction prohibited by federal law. The Government's tardiness in filing this action has not abated the probable cause for its institution. The defendant vehicle and its claimant cannot establish that the Government did not have probable cause for seizure. Therefore, claimant can only prevail by establishing that he is an "innocent owner."

■ The Government contends that Mr. Bogol is not the owner of the Datsun, or that Roxanne Bogol is its equitable owner. The court rejects both contentions for the reasons stated in its Findings of Fact. Mr. Bogol, therefore, is an owner who may claim an "innocent owner" defense. The statutory defenses provided by 21 U.S.C.A. § 881(a)(6) and (7) (West 1981 and Supp. 1986) to an innocent owner are inapplicable to this action because they are limited to forfeitures under those subsections. The defendant vehicle here is forfeitable only under 21 U.S.C.A. § 881(a)(4) (West 1981), or 49 U.S.C.A. § 782 (West 1962). Both of these forfeiture provisions bar forfeiture of a vehicle where the relevant acts or omissions were committed by any person other than the owner while the vehicle was unlawfully in the possession of such other person. 21 U.S.C.A. § 881(a)(4)(B) (West 1981); 49 U.S.C.A. § 782 (West 1962). Claimant does not contend that the defendant vehicle was unlawfully in the possession of Roxanne Bogol on November 27, 1984 or at any other time. Mr. Bogol therefore can only claim the defendant vehicle if as an innocent owner, his property right is protected by the Constitution.

■ The United States Constitution prohibits forfeiture of the property of an owner who was uninvolved in and unaware of the wrongful activity which is the basis of forfeiture and who has done all that reasonably could be expected to prevent proscribed use of his or her property. U.S. Const.Amend. V; *United States v. One (1) 1982 28' International Vessel,* 741 F.2d 1319, 1322 (11th Cir.1984); *United States v. One Tintoretto Painting, etc.,* 691 F.2d 603, 607 (2d Cir.1982); *United States v. One 1957 Rockwell Aero Commander, etc.,* 671 F.2d 414, 418–19 (10th Cir.1982) (expressing some uncertainty over the defense); *United States v. One 1976 Porsche 911S, etc.,* 670 F.2d 810, 812 (9th Cir.1979) (noting the possibility of the defense); *United States v. One 1976 Lincoln Continental Mark IV, etc.,* 584 F.2d 266, 267–68 (8th Cir.1978) (incorporating some doubt about the defense); *United States v. One 1972 Chevrolet Blazer, etc.,* 563 F.2d 1386, 1388, 1391 (9th Cir.1977); *United States v.*

*Various Denominations of Currency,* 628 F.Supp. 4, 7–8 (S.D.W.Va.1984) (noting the possibility of the defense); *United States v. One (1) 1983 Homemade Vessel, etc.,* 625 F.Supp. 893, 898–99 (S.D.Fla.1986); *United States v. One 1977 36 Foot Cigarette Ocean Racer, etc.,* 624 F.Supp. 290, 296 (S.D.Fla.1985); *United States v. One (1) 1984 # 1 Boat Mfg. Lobster Vessel, etc.,* 617 F.Supp. 672, 679 (S.D.Fla.1985); *United States v. One (1) Defender Lobster Vessel Named Betty II,,* 606 F.Supp. 32, 36 (S.D.Fla.1984); *United States v. One 1980 Cadillac Eldorado,* 603 F.Supp. 853, 856–57 (E.D.N.Y.1985); *United States v. One (1) Lot of App. Twenty Thousand (20,000) Pairs of Counterfeit Blue Jeans, etc.,* 601 F.Supp. 476, 479–80 (W.D.N.C.1985); *United States v. (1) 30 Foot 1982 Morgan, etc.,* 597 F.Supp. 589, 590–91 (M.D.Fla.1984); *United States v. Forty-four Thousand Dollars,* 596 F.Supp. 1308, 1310–11 (E.D. Mo.1984) (noting the possibility of the defense); *United States v. One (1) 1980 Stapelton Pleasure Vessel, etc.,* 575 F.Supp. 473, 478 (S.D.Fla.1983); *United States v. One 1980 BMW 3201,* 559 F.Supp. 382, 386 (E.D.N.Y.1983); *United States v. One 1978 Chrysler LeBaron, etc.,* 531 F.Supp. 32, 34 (E.D.N.Y.1981); *Devito v. United States,* 520 F.Supp. 127, 129–31 (E.D.Pa.1981); *United States v. One 1976 Chevrolet Corvette,* 477 F.Supp. 32, 34–35 (E.D.Pa.1979) (claimant bona fide purchaser subsequent to alleged drug transaction); *United States v. One 1976 Lincoln Mark IV,* 462 F.Supp. 1383, 1387 (W.D.Pa.1979). *Cf. Calero-Toledo v. Pearson Yacht Leasing,* 416 U.S. 663, 689, 94 S.Ct. 2080, 2094–95, 40 L.Ed.2d 452 (1974) (dicta suggesting defense).

█ Mr. Bogol was the legal and actual owner of the car and had the unquestioned right to drive it or dispose of it as he chose; he was not just a "nominal" owner. Here, although Roxanne Bogol picked up the defendant vehicle from the automobile dealer, Robert Bogol often drove the car and in the period before the drug transaction the Datsun was usually parked at Mr. Bogol's home. In *United States v. One 1957 Rockwell Aero Commander, etc.,* 671 F.2d 414 (10th Cir.1982), where the defense was un-

successful, the claimant had taken title to the aircraft in question but had never taken possession of or even seen the plane, nor had he exercised control over it in any other way. *Id.* at 418–19.

It is clear that Mr. Bogol was not involved in nor aware of the drug transaction that occurred on November 27, 1984 or any culpable conduct related to that transaction; the Government has not argued nor produced any evidence to the contrary. Even though the claimant bears the burden of proof on his or her innocent owner defense, the predominance of the evidence supports Mr. Bogol's contention that he had nothing to do with the purchase of the methamphetamine and that he neither knew nor had reason to know of any illegal transaction. Mr. Bogol therefore has satisfied the first two prongs of the constitutional innocent owner defense.

Mr. Bogol has also satisfied the third prong of the constitutional innocent owner defense. Roxanne Bogol had no criminal record prior to November 27, 1984, and her father did not know, nor did he have any reason to believe, that she had been or was likely to be involved in any illegal drug use or drug transactions. The record contains no evidence that Roxanne Bogol had ever been involved in such criminal acts before.

The real issue is whether Mr. Bogol did all that reasonably could be expected to prevent proscribed use of his property. In *United States v. One 1976 Lincoln Continental Mark IV, etc.,* 584 F.2d 266 (8th Cir.1978), the Government prevailed where the claimant not only was another nominal owner but had also been on notice of criminal drug activity by the car's user and yet had taken no steps to prevent use of the vehicle to assist illicit conduct. *Id.* at 267–68. *See also United States v. One 1980 Cadillac Eldorado,* 603 F.Supp. 853 (E.D. N.Y.1985) (Government prevails where wife is only nominal owner of car and husband/driver had prior arrests).

In *United States v. One 1972 Chevrolet Blazer, etc.,* 563 F.2d 1386 (9th Cir.1977), the claimant was a son who had purchased

the defendant vehicle from his father. *Id.* at 1387. The father used the Blazer to transport a contraband firearm before title to the vehicle had been changed from him to his son. *Id.* The Government acknowledged that it did not contend that the son knew of his father's criminal activity, nor that the son was in any way negligent in failing to acquire that knowledge. *Id.* at 1390. Although the son had consented to use of the vehicle by his father, *id.* at 1387, the United States Court of Appeals for the Ninth Circuit reversed a grant of summary judgment to the Government by the federal district court, holding that the lower court erred in not permitting the claimant to fully present his ownership claim and prove that he had done everything he reasonably could to avoid unlawful use of the Blazer. *Id.* at 1391. This holding demonstrates that even where one member of a family permits another member to use his or her car, and that car is then used illegally, the owner still can make out the constitutional innocent owner defense. *See also Devito v. United States,* 520 F.Supp. 127 (E.D.Pa. 1981) (Government's summary judgment motion denied where husband had used car for illegal activity but wife/claimant was car's owner); *United States v. One 1976 Lincoln Mark IV,* 462 F.Supp. 1383 (W.D. Pa.1979) (claimant/owner prevails on constitutional innocent owner defense where brother-in-law with whom he was living had permission to use the car and used it for criminal activity).

It is true that Mr. Bogol did not specifically tell his daughter not to use the Datsun for illegal purposes. However, he had no knowledge, nor any reason to believe, that Roxanne Bogol would consider engaging in such conduct; this behavior was reasonable. Those cases which have rejected the constitutional innocent owner defense on the ground that a claimant/owner who was not involved in nor aware of any criminal activity nevertheless should have taken positive steps to ascertain the likelihood of, or to prevent, such activity, have all involved claimants living or operating near or on the Gulf of Mexico or the Caribbean who, without any sort of background

investigation or other steps, have leased boats to strangers who then used the vessels in drug transactions.

In *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), the Supreme Court upheld forfeiture of a yacht where its owner/lessor was not involved in nor aware of the use of the yacht to smuggle marijuana. *Id.* at 664, 94 S.Ct. at 2082. The court noted that to "lessors, bailors, or second creditors who are innocent of any wrongdoing, confiscation may have the desirable effect of inducing them to exercise greater care in transferring possession of their property." *Id.* at 687, 94 S.Ct. at 2094. The court also observed that the yacht leasing company had not even alleged, much less proved, that it had done all it reasonably could to prevent the illegal use of its vessels. *Id.* at 690, 94 S.Ct. at 2095. A company leasing a yacht for use in the Caribbean can reasonably be expected to engage in some investigation of the persons to whom it is leasing its vessel and the use(s) to which the yacht will be put. *United States v. One (1) Defender Lobster Vessel Named Betty II,* 606 F.Supp. 32, 36 (S.D.Fla.1984); *United States v. One (1) 1980 Stapelton Pleasure Vessel, etc.,* 575 F.Supp. 473, 478 (S.D.Fla.1983). Depending upon the quantity of information discovered and the length of the rental period, further investigation during the leasehold might be expected. *United States v. One (1) 1983 Homemade Vessel, etc.,* 625 F.Supp. 893, 898–99 (S.D.Fla.1986) (inexperienced new owner of vessel who checked on its status periodically did all that reasonably could be expected to prevent its illegal use).

This family situation where the father reasonably thought that he knew his daughter and her behavior is completely different from a commercial situation where a lessor has an obligation to investigate its lessee. The Government has not suggested what steps should have been taken by a father who permitted his daughter to use his car to drive to work because the automobile she had been using was not

running properly where that father had no reason to believe his daughter had ever or would ever engage in illegal drug use or an illegal drug transaction. Where, as here, the father often drove the car and saw it on most days of the week, the court finds that the father did all that reasonably could be expected of him to prevent illegal use of the automobile. The Government's contention that Mr. Bogol's conduct *after* November 27, 1984 was unreasonable is unfounded and irrelevant. The question is whether he did all that reasonably could be expected *before* the events on which forfeiture is based. Mr. Bogol did make numerous attempts after November 27, 1984 both to contact his daughter and to find the Datsun; that he was more concerned with the former goal is hardly unreasonable. The court concludes that Mr. Bogol is an innocent owner and that the Government's request for forfeit of the defendant vehicle must be denied as unconstitutional on these facts.

All findings of fact included in this Discussion are incorporated in the court's specific Findings of Fact preceding this Discussion. All conclusions of law included in this Discussion are incorporated in this court's specific Conclusions of Law following this Discussion.

### Conclusions of Law

The court has jurisdiction over the Government's complaint in forfeiture under 21 U.S.C.A. § 881(a)(4) (West 1981) and 49 U.S.C.A. § 782 (West 1963).

The Government bears the initial burden of proof to show probable cause for the institution of this action; if shown, the burden of proof shifts to the defendant vehicle and the claimant to prove that the vehicle is not forfeitable. 19 U.S.C.A. § 1615 (West 1980 and Supp.1986); 21 U.S.C.A. § 881(d) (West Supp.1966); 49 U.S.C.A. § 784 (West 1963).

The Government has shown probable cause to institute this action. Claimant is the legal and equitable owner of the defendant vehicle but the statutory rights of innocent owners provided for in 21 U.S.C.A. § 881(a)(6) and 49 U.S.C.A. § 782 do not apply where, as here, the person committing the unlawful acts, Roxanne Bogol, was lawfully in possession of claimant's vehicle.

The United States Constitution prohibits forfeiture of a vehicle where its owner was not involved in nor aware of the wrongful activity for which forfeiture is sought and the owner has done all that reasonably could be expected to prevent proscribed use of the vehicle. U.S. Const.Amend. V.

Claimant is the sole legal and equitable owner of the defendant vehicle.

Claimant was not involved in nor aware of the drug transaction that occurred on November 27, 1984 or any culpable conduct related to that transaction. Claimant had no reason to be aware of or anticipate that transaction or such conduct and had no reason to believe that his daughter or the defendant vehicle had been or would be involved in any criminal activity.

Claimant did all that reasonably could be expected to prevent use of the defendant vehicle in any proscribed manner.

Claimant is an "innocent owner" and therefore his automobile may not be forfeited under the Constitution of the United States.

An appropriate Order follows.

### ORDER

AND NOW, this 19th day of August, 1986, for the reasons stated in the foregoing Findings of Fact and Conclusions of Law, it is ORDERED that:

1. Judgment will be entered in favor of the defendant One 1981 Datsun 280ZA VIN: JN1HZ04S4BX407742 and against plaintiff the United States of America.

2. Judgment will be entered in favor of claimant Robert J. Bogol and against plaintiff the United States of America.

3. The United States of America shall permit claimant to recover the defendant vehicle from wherever it is being held forthwith.