## UNITED STATES v. BATRE.

### No. 7124.

Circuit Court of Appeals, Ninth Circuit.

March 12, 1934.

Clifton Mathews, U. S. Atty., and K. Berry Peterson, both of Phœnix, Ariz., for appellant.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

GARRECHT, Circuit Judge.

Appeal from judgment and decree of District Court adjudging a prior contractual lien, held by the mortgagee of an airplane, to be superior and paramount to a lien created

by statute for violation of section 11 of the Air Commerce Act of 1926 (49 USCA § 181).

There is no dispute as to the facts which were found by the District Court to be substantially as follows: One Clair K. Scholey, the owner of a certain biplane, flew the same from Mexico into the United States, landing near Florence, Ariz., which had not been designated as an airport of entry by the Secretary of the Treasury. Scholey reported no circumstances of a forced landing to the collector of customs for the District of Arizona, as would be required to avoid penalty. About three days after his landing in Florence the airplane was seized by inspectors of customs and was placed in the custody of the collector. Alma R. Batre, appellee, was the holder of a duly recorded chattel mortgage in the sum of $4,000, secured by said airplane. A libel in rem to collect the penalty was filed against the airplane, as provided by statute (49 US CA § 181). Thereupon appellee filed an "Intervener's Cross Bill" alleging existence of a chattel mortgage; that it remained unpaid; and that the intervener had no knowledge that the aircraft was being used in violation of the Air Commerce Act. The prayer in intervention was for a declaration that the lien of the chattel mortgage be adjudged superior to the lien for the penalty and that if the airplane be ordered sold the proceeds be first applied to payment of the mortgage. The judgment of the lower court imposed the penalty required, declared the same to be a lien upon the airplane, and ordered the airplane sold with the proceeds to be applied as follows: First, to costs and expenses of seizing, holding, and sale; second, to payment of amount of mortgage; and, third, to payment of the penalty. From this judgment the government appeals. The record comes to us on the undisputed facts, the sole point urged as error upon appeal being the action of the court in giving the lien of the chattel mortgage priority to the penalty lien of the statute.

By the statute the Secretary of the Treasury is authorized to designate places as ports of entry at which airplanes crossing the international border must land, and to make such regulations as may be deemed necessary. 49 USCA § 177. For the violation of this statute penalties were imposed, among others being a civil penalty of $500 upon any person violating any regulation, and in case the violation be by the owner or the person in command of the airplane the penalty shall be a lien against the aircraft collectible by proceedings in rem, against the aircraft, conformable to civil suits in admiralty. 49 US

CA § 181. In conformity to this statute regulations were promulgated by the Department of Commerce and by the Secretary of the Treasury, making it incumbent upon the person in command of aircraft contemplating entry into the United States from any foreign port or place to inform the collector of customs at the place of intended first landing of the proposed flight; to immediately report upon landing to said collector; and providing for declaration of contents. Should there be a forced landing the regulations make provision for immediate report and inspection. There is also provision exempting regular carriers from certain of the regulations.

This is the first time this court has been called upon to construe the penalty provisions of the Air Commerce Act, and we have applied thereto the recognized rules of construction.

"Cardinal rules for the construction of a statute are that the intention of the legislative body which enacted it should be ascertained and given effect, if possible, regardless of technical rules of construction and the dry words of the enactment; that that intention must be deduced not from a part but from the entire law; that the object which the enacting body sought to attain and the evil which it was endeavoring to remedy may always be considered for the purpose of ascertaining its intention; that the statute must be given a rational, sensible construction; and that, if this be consonant with its terms, it must have an interpretation which will advance the remedy and repress the wrong." Stevens v. Nave-McCord Merc. Co. (C. C. A.) 150 F. 71, 75.

See U. S. v. Ninety-Nine Diamonds (C. C. A.) 139 F. 961, 965, 2 L. R. A. (N. S.) 185; Interstate Drainage & Inv. Co. v. Board of Com'rs, etc. (C. C. A.) 158 F. 270, 273; U. S. v. Hogg et al. (C. C. A.) 112 F. 909, 912.

■ Generally speaking: "Statutes are construed strictly against forfeiture. A statute which subjects one man's property to be affected by, charged or forfeited for the acts of another, on grounds of public policy, should be strictly construed; it cannot be done by implication." Lewis' Sutherland, Statutory Construction (2d Ed.) vol. 2, p. 1020.

■ However, there is a long line of cases which hold that: "Statutes to prevent frauds upon the revenue are considered as enacted for the public good and to suppress a public

wrong, and therefore, although they impose penalties and forfeitures are not to be construed like penal laws generally, strictly in favor of the defendant; but they are to be fairly and reasonably construed, so as to carry out the intention of the legislature." U. S. v. Stowell, 133 U. S. 1, 12, 10 S. Ct. 244, 33 L. Ed. 555, and cases there cited.

See, also, Goldsmith, Jr.-Grant Co. v. U. S., 254 U. S. 505, 510, 41 S. Ct. 189, 65 L. Ed. 376; U. S. v. Ryan, 284 U. S. 167, 172, 52 S. Ct. 65, 76 L. Ed. 224; U. S. v. One Black Horse (D. C.) 129 F. 167.

The power of Congress to enact this legislation must be conceded—it is a fundamental idea of sovereignty that a nation may say who shall cross its borders and when and in what manner. The International Convention for the Regulation of Air Navigation (1919) provided in article 1 of its rules that: "The high contracting parties recognize that every power has complete and exclusive sovereignty over the air space above its territory."

The purpose of the Congress in enacting the Air Commerce Act of 1926 is revealed in the language of the accompanying report of the Committee on Interstate and Foreign Commerce as follows: "The enforcement of the foreign-commerce regulations by the civil penalties collectible in administrative or admiralty proceedings is the same principle as is used in the enforcement of the customs, immigration, narcotic drug, and navigation laws, and the provisions of the bill are based upon the provisions of those laws."

Another pertinent consideration is whether the thing or only the person can be considered the offender. The fact that the statute provides that the proceeding be "in rem" is an indication that the airplane can properly be considered the offender, and this without straining the words of the statute. The Palmyra, 12 Wheat. (25 U. S.) 1, 14, 6 L. Ed. 531.

If the penalty is incapable of enforcement, which is the result if the decision of the lower court is affirmed, then this provision affords no aid in preventing violation of the law. It can readily be seen that if a lien created by a chattel mortgage is held superior to this penalty lien those so disposed can always evade it by mortgaging the airplane up to or beyond its actual value, with the result that the government could never collect the penalty and the law would be without force. Its object would not be accomplished.

Ordinarily, the word "penalty" is regarded as being substantially synonymous with the word "forfeiture," both indicating a punishment, and no reason here appears for making a distinction.

While the statute does not in terms declare a forfeiture, still the enforcement of the penalty lien, in effect, operates to bring about such a result. If this was not intended the remedy must be sought from Congress, not the courts.

An inspection of the act and the regulations pursuant thereto further indicates that revenue alone is not the sole purpose of the law. A firm hold upon immigration, narcotic drug trade, and protection to the public health is also contemplated.

There are cases to the effect that it is not necessary that the act be one in aid of the public revenue in order to work a forfeiture. Forfeiture has been decreed in cases of vessels failing to have the name displayed in a conspicuous manner. The Lewellen, 15 Fed. Cas. 444, No. 8307, and in cases where vessels have carried more passengers than permitted by law, Hatch v. The Steam-Boat Boston (D. C.) 3 F. 807. In the latter case the court held the penalty lien was not divested by subsequent sale to a bona fide purchaser.

Nor are we here dealing with an innocent owner who has been injured by the act of some third person, without his knowledge or consent. Here the owner was in possession and command of the aircraft; he was the one who violated the regulation. True if the penalty lien is adjudged paramount, a hardship falls upon the mortgagee; but the mortgage was entered into after passage of the Air Commerce Act and the mortgagee knew, or should have known, of the provisions of the act. In the circumstances, the Air Commerce Act became a part of the mortgage. The airplane was permitted to remain in the possession of the owner without restriction upon the use and the mortgagee having left it within the power of the owner to violate the law cannot now complain. The Live Oak (D. C.) 30 F. 78.

The Supreme Court of the United States, speaking through Mr. Justice Story, says in Harmony v. United States (U. S. v. Brig Malek Adhel, etc.), 2 How. (43 U. S.) 210, 233, 11 L. Ed. 239: "The next question is, whether the innocence of the owners can withdraw the ship from the penalty of confiscation under the act of Congress. Here, again, it may be remarked that the act makes no exception whatsoever, whether the aggression be with or without the co-operation of the owners. The vessel which commits the aggression is treated as the offender, as the guilty instrument or

676

thing to which the forfeiture attaches, without any reference whatsoever to the character or conduct of the owner. * * * It is not an uncommon course in the admiralty, acting under the law of nations, to treat the vessel in which or by which, * * * a wrong or offence has been done as the offender, without any regard whatsoever to the personal misconduct or responsibility of the owner thereof. And this is done from the necessity of the case, as the only adequate means of suppressing the offence or wrong. * * * The doctrine also is familiarly applied to cases of smuggling and other misconduct under our revenue laws; and has been applied to other kindred cases, such as cases arising on embargo and non-intercourse acts."

Had the Congress desired an exemption from penalty under this act to apply to innocent third parties, it would have been so stated, as has been done in other enactments. 27 USCA § 40.

Judgment of the lower court is reversed, and cause remanded, with directions to enter a judgment granting the penalty lien priority to the lien of the chattel mortgage.