671 F.2d 414
 UNITED STATES of America, Libellant-Appellee,
v.
ONE 1957 ROCKWELL AERO COMMANDER 680 AIRCRAFT, VIN. NO.
680-515-186, FAA NO. N6247D, Libellee,
Frank Parker, Appellant.
 No. 81-1254.
 United States Court of Appeals,
Tenth Circuit.
 Submitted Feb. 2, 1982.
Decided Feb. 22, 1982.
 
 R. E. Thompson, U. S. Atty., and Larry Gomez, Asst. U. S. Atty., Albuquerque, N. M., for libellant-appellee.
 Leo C. Kelly of Lill, Kelly & Barr, and Roderick T. Kennedy, Albuquerque, N. M., for appellant.
 Before BARRETT, DOYLE and LOGAN, Circuit Judges.
 BARRETT, Circuit Judge.
 
 
 1
 Frank R. Parker (Parker) appeals from a final judgment of condemnation and forfeiture. The United States initiated this action seeking forfeiture of an aircraft owned by Parker under 49 U.S.C.A. §§ 1474 and 1509 for non-compliance with United States Customs Service regulations regarding entry and notice of entry into the United States from foreign countries. The relevant facts are not in dispute.
 
 
 2
 Shortly before noon on January 7, 1980, the subject aircraft, a 1957 Rockwell Aerocommander 680, was observed by customs officers crossing the United States border into Mexico. Thereafter, during the late evening of the same day, the aircraft was observed returning from Mexico and entering the air space of the United States.
 
 
 3
 Upon its return into the United States, the aircraft proceeded to the vicinity of Hobbs, New Mexico, where a customs officer observed the aircraft extinguish its position lights, turn, and disappear. Several minutes later, air traffic control observed an unidentified aircraft flying from the general area of Hobbs toward Roswell, New Mexico. On January 8, 1980, at approximately 1:00 A.M., a New Mexico state police officer observed the aircraft parked at the Roswell airport. The Roswell airport is not a designated customs airport.
 
 
 4
 In traveling from the United States into Mexico and back, the aircraft did not give advance notice of its entry into the United States nor did it land at a designated United States customs airport upon its entry, as required by 19 C.F.R. §§ 6.2, 6.14, and 49 U.S.C.A. §§ 1474 and 1509.
 
 
 5
 Parker, a resident of Illinois, had acquired title to the aircraft on September 19, 1979, when it was transferred to him in payment of a debt. At the time Parker acquired the plane, it was located at the Roswell airport.
 
 
 6
 During the course of the trial Parker testified, inter alia, that: after acquiring the aircraft he left it at the Roswell airport with the thought of reselling it; in late March or early April, 1980, he was informed that the aircraft had been seized; he did not make any effort to prevent someone from flying the aircraft after he acquired it; he was unaware that someone had flown the aircraft into Mexico and back on January 7-8, 1980; and, he had not authorized or consented to the operation of the aircraft on January 7-8, 1980.
 
 
 7
 Within its findings of fact the district court found, inter alia :
 
 
 8
 That the claimant Frank R. Parker had no defense to this action except that he claimed no knowledge of the flight and had no knowledge that the airplane was not complying with the laws of the United States. That such claim is no defense as set forth in U. S. v. Batre, (9th Cir.) 69 F.2d 673. Reference is made to that case and particularly to paragraphs 7 and 8. That the aircraft in question was permitted to remain in the possession of someone who violated the laws of the United States and the claimant cannot now complain. His claim of innocence does not except him from the law or provide a defense for him.
 
 
 9
 Claimant, Frank R. Parker, produced no evidence that he had used the aforesaid aircraft as a common carrier in the transaction of business.
 
 
 10
 Claimant, Frank R. Parker, has shown no sufficient reasons to this Court to deny forfeiture of aforesaid aircraft to the libellant, United States of America, or to turn over said aircraft to him (Frank R. Parker).
 
 
 11
 The aircraft should be forfeited to the libellant, United States of America, in accordance with 19 C.F.R. 6.11, and 49 U.S.C. 1474 and 1509.
 
 
 12
 (R., Vol. I, at pp. 19-20).
 
 
 13
 On appeal Parker contends: (1) the district court erred in not making any findings of fact or law under 19 C.F.R. §§ 171.11 and 13 and deciding the case under United States v. Batre, 69 F.2d 673 (9th Cir. 1934); (2) forfeiture statutes should be strictly construed and forfeiture of property belonging to totally innocent owners due to the actions of third persons committed without the knowledge, consent, or negligence of the owner should not be upheld; and (3) the forfeiture of the aircraft violates the Fifth Amendment protection against the taking of private property for public use without just compensation.
 
 I.
 
 14
 The district court did not err in deciding this case in accordance with United States v. Batre, supra. In Batre the court, in construing 49 U.S.C. §§ 177 and 181, which were repealed in 1958 and replaced by 49 U.S.C. §§ 1509 and 1474, observed:
 
 
 15
 The Supreme Court of the United States, speaking through Mr. Justice Story, says in Harmony v. United States (U. S. v. Brig Malek Adhel, etc.), 2 How. (43 U.S.) 210, 233, 11 L.Ed. 239: "The next question is, whether the innocence of the owners can withdraw the ship from the penalty of confiscation under the Act of Congress. Here, again, it may be remarked that the act makes no exception whatsoever, whether the aggression be with or without the co-operation of the owners. The vessel which commits the aggression is treated as the offender, as the guilty instrument or thing to which the forfeiture attaches, without any reference whatsoever to the character or conduct of the owner. * * * It is not an uncommon course in the admiralty, acting under the law of nations, to treat the vessel in which or by which, * * * a wrong or offence has been done as the offender, without any regard whatsoever to the personal misconduct or responsibility of the owner thereof. And this is done from the necessity of the case, as the only adequate means of suppressing the offence or wrong. * * * The doctrine also is familiarly applied to cases of smuggling and other misconduct under our revenue laws; and has been applied to other kindred cases, such as cases arising on embargo and non-intercourse acts."
 
 
 16
 Had the Congress desired an exemption from penalty under this act to apply to innocent third parties, it would have been so stated, as has been done in other enactments.
 
 
 17
 69 F.2d at pp. 675-676.
 
 
 18
 It is uncontested that Parker's aircraft flew from the United States into Mexico and back in violation of §§ 1474 and 1509 and their related regulations. Under such circumstances, Parker's professed lack of knowledge is of no moment.
 
 
 19
 Equally without merit is Parker's assertion that the district court erred in not making any findings of fact or law under 19 C.F.R. 171.11 and 171.13. These regulations relate exclusively to administrative petitions addressed to the Commissioner of Customs for the "remission or mitigation of a fine, penalty, or forfeiture under any law administered by Customs ..." and, as such, were not properly before the district court.
 
 II.
 
 20
 Parker contends that forfeiture statutes must be strictly construed and that forfeiture is improper when upheld against totally innocent owners due to the actions of third parties committed without the knowledge, consent, or negligence of the owner.
 
 
 21
 Forfeitures are clearly not favored and are to be enforced only when within both the spirit and letter of the law. United States v. One Ford Coach, 307 U.S. 219, 59 S.Ct. 861, 83 L.Ed. 1249 (1939); Rush v. United States, 256 F.2d 862 (10th Cir. 1958). We have heretofore recognized the harshness of forfeiture as a remedy. United States v. One (1) 1975 Thunderbird, Etc., 576 F.2d 834 (10th Cir. 1978). Accordingly the proof of the use of property in violation of a statute must be clear before forfeiture is ordered. Id.
 
 
 22
 However, although admittedly harsh, forfeiture is recognized as a useful governmental tool to assure compliance with recognized standards of conduct. United States v. 1978 Cadillac El Dorado 2-Door Coupe, Etc., 489 F.Supp. 532 (D.Utah C.D.1980). Once the Government, as here, meets its initial burden of showing probable cause for the institution of a forfeiture action, it is the claimant's burden to prove that the requested forfeiture does not fall within the four corners of the statute. United States v. One 1977 Pickup, Etc., 503 F.Supp. 1027 (D.Colo.1980).
 
 
 23
 Courts have little discretion in forfeiture actions. In United States v. One 1976 Buick Skylark, Etc., 453 F.Supp. 639 (D.Colo.1978), the court observed:
 
 
 24
 The courts have little, if any, discretion in forfeiture cases. (U. S. v. One 1973 Jaguar Coupe, 431 F.Supp. 128 (D.C.N.Y.1977)). It is the government's burden to prove that there was probable cause for the institution of a forfeiture action. (U. S. v. One 1973 Dodge Van, 416 F.Supp. 43 (D.C.Mich.1976)). Once established it is the claimant's burden to prove that the forfeiture does not fall properly within the act. (U. S. v. One 1972 Toyota Mark II, 505 F.2d 1162 (C.A.Mo.1974)).
 
 
 25
 453 F.Supp. at pp. 641-642.
 
 
 26
 Innocence, in and of itself, is an insufficient defense to forfeiture. In Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), the Court opined:
 
 
 27
 The enactment of forfeiture statutes has not abated; contemporary federal and state forfeiture statutes reach virtually any type of property that might be used in the conduct of a criminal enterprise.
 
 
 28
 Despite this proliferation of forfeiture enactments, the innocence of the owner of property subject to forfeiture has almost uniformly been rejected as a defense. Thus, Mr. Justice Story observed in The Palmyra, 12 Wheat. 1 (6 L.Ed. 531) (1827), that a conviction for piracy was not a prerequisite to a proceeding to forfeit a ship allegedly engaged in piratical aggression in violation of a federal statute:"It is well known, that at the common law, in many cases of felonies, the party forfeited his goods and chattels to the crown. The forfeiture did not, strictly speaking, attach in rem ; but it was a part, or at least a consequence, of the judgment of conviction .... (T)he (Crown's right to the goods and chattels) attached only by the conviction of the offender .... But this doctrine never was applied to seizures and forfeitures, created by statute, in rem, cognizable on the revenue side of the Exchequer. The thing is here primarily considered as the offender, or rather the offence is attached primarily to the thing; and this, whether the offence be malum prohibitum, or malum in se .... (T)he practice has been, and so this Court understand the law to be, that the proceeding in rem stands independent of, and wholly unaffected by any criminal proceeding in personam." Id., at 14-15.
 
 
 29
 This rationale was relied upon to sustain the statutory forfeiture of a vessel found to have been engaged in piratical conduct where the innocence of the owner was "fully established." United States v. Brig Malek Adhel, 2 How. 210, 238 (11 L.Ed. 239) (1844). The vessel was "treated as the offender," without regard to the owner's conduct, "as the only adequate means of suppressing the offense or wrong, or insuring an indemnity to the injured party." Id., at 233.
 
 
 30
 416 U.S. at pp. 683-684, 94 S.Ct. at 2091-92. (Footnotes omitted).
 
 
 31
 The Court in Calero-Toledo did acknowledge that innocence, coupled with an owner's reasonable actions to prevent the proscribed use of his property could, possibly, prevent forfeiture:
 
 
 32
 Similarly, the same might be said of an owner who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property; for, in that circumstance, it would be difficult to conclude that forfeiture served legitimate purposes and was not unduly oppressive. Cf. Armstrong v. United States, 364 U.S. 40, 49 (80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554) (1960).
 
 
 33
 416 U.S. at pp. 689-690, 94 S.Ct. at 2094-95.
 
 
 34
 This potential exception, however, is not applicable to the case at bar. Parker's own, unrefuted testimony is that he acquired title to the aircraft on or about September 19, 1979. Subsequent thereto he took no precautions to prevent someone from using the plane and was not even aware, until some time in late March or early April, 1980, that the aircraft had been seized. Parker's apparent complete inattentiveness to the aircraft for a period in excess of six months may certainly be deemed negligence in light of the Calero-Toledo standard that an owner alleging the impropriety of forfeiture do "all that reasonably could be expected to prevent the proscribed use of the property".
 
 
 35
 Parker, by his own admission, did absolutely nothing in conjunction with or in protection of his ownership interests in the aircraft for a period in excess of six months after he acquired the aircraft in satisfaction of a debt. He not only failed to register the aircraft with the Federal Aviation Administration, but did not attempt to obtain actual possession of the aircraft or its keys until six months after title to the aircraft was transferred to him. As of the day of the forfeiture hearing, Parker had never seen the plane. As such, he cannot be heard to complain at this late date of the efficacy and legal validity of the subject forfeiture proceeding.
 
 III.
 
 36
 Parker failed to establish that he exercised due care in entrusting another with the possession of his property. United States v. One 1972 Chevrolet Blazer, Etc., 563 F.2d 1386 (9th Cir. 1977). Under these circumstances the forfeiture of the aircraft was proper, and not in derogation of Parker's Fifth Amendment rights. Calero-Toledo, supra, at pp. 685-686, 94 S.Ct. at 2092-93, citing Goldsmith-Grant Co. v. United States, 254 U.S. 505, 41 S.Ct. 189, 65 L.Ed. 376 (1921).
 
 
 37
 WE AFFIRM.