UNITED STATES of America, Plaintiff,

v.

3,210 CRUSTED SIDES OF CAIMAN CROCODILUS YACARE, a certain species of wildlife, plus an additional 7,665 crusted sides of Caiman crocodilus yacare, Defendant.

No. 84–0959–CIV.

United States District Court,
S.D. Florida, N.D.

May 28, 1986.

Robert Rosenberg, Asst. U.S. Atty., Miami, Fla., for plaintiff.

David Weider, Miami, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GONZALEZ, District Judge.

The plaintiff, the United States of America, seeks forfeiture of the defendant, 10,870 crusted sides of *Caiman crocodilus yacare*, an endangered species of wildlife (hides), pursuant to the Endangered Species Act of 1973 (Endangered Species Act), 16 U.S.C. § 1538(a)(1)(A) (1985); The Convention on International Trade in Endangered Species of Wild Fauna and Flora (CITES), Convention done at Washington, D.C., August 3, 1973, T.I.A.S. No. 8249, implemented by 16 U.S.C. § 1531(a)(4)(F); and the Lacey Act Amendments of 1981 (Lacey Act), 16 U.S.C. § 3372(a)(2)(A) (1985). Societe Des Fourrures Maurice, S.A. a/k/a Frutradimex (Frutradimex) and Marva Sr. Ltds. Disposicion de Fru Tradimex (Marva) claim ownership of the defendant hides and contest their forfeiture. The court has jurisdiction pursuant to 16 U.S.C. § 1540(c) (1985) and 28 U.S.C. §§ 1345 (1976) and 1355 (1985).

### FINDINGS OF FACT

1. A consignment of crocodile hides, or crusted sides of Caiman, were shipped from Santa Cruz, Bolivia by Curtiembre San Matias Ltd. The ultimate destination of the hides was given as Marva S.R. Ltd., Paris, France.

2. The term "crusted sides of Caiman" refers to the fact that the hides have undergone a preliminary tanning process.

3. The hides arrived at Miami International Airport, Miami, Florida, on September 16, 1982.

4. The hides were shipped aboard Lloyd Aero Boliviano (LAB) Flight No. 908 under Airway Bill No. 051–05660944.

5. The airway bill listed the hides as *Caiman crocodilus crocodilus.*

6. The CITES permit accompanying the hides described the hides as *Caiman croco-*

*dilus crocodilus.* Bolivia was given as the country of origin for the hides and their number was given as 3,210. The permit indicates 1,605 animals, which equals 3,210 skins.[1]

7. During a routine inspection, inspectors for the United States Fish and Wildlife Service (Fish and Wildlife Service), decided to detain the hides, because the country of origin listed on the CITES permit accompanying the hides was deemed to be suspicious.

8. Inspection of the hides was assigned to Special Agent Patrick McIntosh who preliminarily determined that the hides were *Caiman crocodilus yacare* (an endangered species), and not *Caiman crocodilus crocodilus* as the accompanying documentation indicated. Special Agent McIntosh based his conclusions on the fact that the subspecies *crocodilus crocodilus* is not native to Bolivia and that a count of the scales on the hides indicated that the hides were *crocodilus yacare* and not *crocodilus crocodilus.*

9. The Fish and Wildlife Service obtained expert identification and classification of the subspecies from Dr. Wayne King of the Florida State Museum on November 2, 1982. On December 2, 1982, Dr. King indicated that the hides were in fact *Caiman crocodilus yacare.*

10. Eighty-four percent of the seized hides were smaller than 85 centimeters.

11. The number of hides listed on the CITES permit was 3,210, when in fact, the correct number of hides was 10,875.

12. The claimants, Frutradimex and Marva, were jointly engaged in the business of procuring and shipping hides from Bolivia to France, in association with Curtiembre San Matias Ltd., of Bolivia.

## CONCLUSIONS OF LAW

1. A forfeiture action is a proceeding *in rem,* in which the property is considered to be the offender. *Calero-Toledo v. Pearson*

*Yacht Leasing Co.,* 416 U.S. 663, 684, 94 S.Ct. 2080, 2092, 40 L.Ed.2d 452 (1974) *quoting The Palmyra,* 12 Wheat. 1, 14–15, 6 L.Ed. 531 (1827).

2. To contest a forfeiture action a claimant must "first demonstrate an interest in the seized item sufficient to satisfy the court of its standing to contest the forfeiture." *United States v. $364,960.00 in United States Currency,* 661 F.2d 319, 326 (5th Cir. Unit B 1981); *See also United States v. Five Hundred Thousand Dollars,* 730 F.2d 1437, 1439 (11th Cir.1984). Standing is a threshold issue and the burden, of proving standing in a forfeiture action, rests on the claimant. *Id.*

3. The claimants, Frutradimex and Marva, have demonstrated a sufficient interest in the defendant hides to meet the standing requirements in a forfeiture proceeding. The testimony at trial established that Marva and Frutradimex were members of a joint venture and entered into this joint venture for the purpose of purchasing and shipping hides. Consequently, each of the members has equal rights to possession of the subject *res,* and accordingly, has standing to contest the forfeiture. *Sasportes v. M/V Sol De Copacabana,* 581 F.2d 1204, 1208 (5th Cir.1978).

4. Once the claimants have established standing, the forfeiture proceeding commences with the government bearing the initial burden of proof to establish that probable cause exists to initiate the forfeiture action. *United States v. One 1971 Chevrolet Corvette Automobile,* 496 F.2d 210, 212 (5th Cir.1974). This burden is set forth in 19 U.S.C. § 1615 (1985 Supp.), as incorporated by 16 U.S.C. § 1540(e)(5) (1985) (the enforcement provision of the Endangered Species Act).

In all suits or actions ... brought for the forfeiture of any vessel, vehicle, aircraft, merchandise, or baggage seized under the provisions of any law relating to the collection of duties or imports or ton-

---

**1.** The government presented sufficient evidence at trial that each animal produces two (2) skins.

The claimants did not rebut this showing.

nage, where property is claimed by any person, the burden of proof shall lie upon such claimant.... *Provided,* That probable cause shall be first shown for the institution of such suit or action, to be judged by the court.

19 U.S.C. § 1615 (1985 Supp.).

5. Once the government has met its burden of proving probable cause to bring the forfeiture proceeding, "the burden then shifts to the claimant to show by a preponderence of the evidence that the property was not subject to forfeiture." *United States v. $22,287.00 in United States Currency,* 709 F.2d 442, 446 (6th Cir.1983); *Accord United States v. One 1975 Ford F100 Pick Up Truck,* 558 F.2d 755, 765 (5th Cir.1977).

6. Probable cause in forfeiture proceedings is defined as a "reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion." *United States v. One 1978 Chevrolet Impala,* 614 F.2d 983, 984 (5th Cir.1980) (citations omitted).

7. The government has predicated probable cause for instituting the forfeiture proceeding on the following:

a) That importation of the defendant hides into the United States was a violation of the Endangered Species Act, 16 U.S.C. § 1538(a)(1)(A) (1985), in that *Caiman crocodilus yacare* appears on the Endangered Species List of the Secretary of the Interior as published at 50 C.F.R. § 17.11.

b) That importation of the defendant hides into the United States is a violation of the Convention on International Trade in Endangered Species of Wild Fauna and Flora (CITES).

c) That the vast majority of the subject hides are undersized and the hides are *res* imported in violation of the Lacey Act, 16 U.S.C. § 3372(a)(2)(A) (1985).

8. The court finds that the government had probable cause to bring this forfeiture proceeding on each of the three asserted grounds:

### a) *Probable Cause as to Violations of the Endangered Species Act*

There were reasonable grounds on which to base a belief that the hides were of the subspecies *yacare,* and subject to forfeiture under the Endangered Species Act, 16 U.S.C. § 1538(a)(1)(A) (1985). Section 1538(a)(1)(A) provides that "it is unlawful for any person subject to the jurisdiction of the United States to—(A) import any such species into, or export any such species from the United States...."

The term import is defined as meaning "to land on, bring into, or introduce into, or attempt to land on, bring into any place subject to the jurisdiction of the United States, whether or not such landing, bringing, or introduction constitutes an importation within the meaning of the customs laws of the United States." 16 U.S.C. § 1532(10) (1985).

■ LAB Flight No. 908 made an unscheduled landing at the Miami International Airport. The claimants argue that an unscheduled landing does not constitute importation within the meaning of § 1532(10). The court has considered the claimants' arguments and finds that as a matter of law the hides were imported, within the meaning of § 1532(10).

■ Special Agent McIntosh testified, based on his training and experience, that the specimen hides were of the subspecies *yacare,* and were not *crocodilus,* as maintained by the claimants. Special Agent McIntosh formed his belief after counting the rows of scales on the hides. The government also consulted Dr. Wayne King of the Florida State Museum, who determined that the hides were *yacare.* The probable cause which must exist is "reasonable ground for belief of guilt supported by less than prima facie proof but more than a mere suspicion." *One 1978 Chevrolet Impala,* 614 F.2d at 984. The court is satisfied that there existed, at the time the suit was instituted, sufficient probable cause to bring proceedings of forfeiture for violation of the Endangered Species Act.

b) *Probable Cause as to Violations of the Convention on International Trade in Endangered Species of Wild Fauna and Flora (CITES)*

■ There were reasonable grounds on which to base a belief that the defendant hides were imported into the United States in violation of the Convention on International Trade in Endangered Species of Wild Fauna and Flora (CITES), thus constituting a violation of 16 U.S.C. § 1531(a)(4)(F) and § 1538(c)(1). Title 16 Section 1538(c)(1) provides: "[i]t is unlawful for any person subject to the jurisdiction of the United States to engage in trade in any specimens contrary to the provisions of the Convention [CITES], or to possess any specimens traded contrary to the provisions of the Convention [CITES]...."

The documentation accompanying the hides identifies the hides as being *Caiman crocodilus crocodilus.* Although this subspecies of caiman is not included on the CITES list of species now threatened with extinction (Appendix I to CITES), it is included within that list of animals "subject to strict regulation in order to avoid utilization incompatible with their survival." CITES, Article II(2)(A).

The second list (those species subject to "strict regulation"), is found in Appendix II of CITES. This list includes the subspecies *crocodilus.* *See* Appendix A. Therefore, any trading in the subspecies *crocodilus* must be in accordance with CITES regulations. CITES, Article II, (4).[2]

Article VI of CITES, the section dealing with permits and certificates, requires that all permits must be originals, except that a copy may be used if it is "endorsed" by the Management Authority of the country of export. *See* Appendix B. In this case, that country would be Bolivia. The permit accompanying the defendant hides is not an original, but an unendorsed xeroxed copy. Therefore, the permit accompanying the hides is in violation of CITES requirements.

CITES also requires that a separate permit or certificate accompany each group of specimens being exported. *See* CITES, Article VI(5). Finally, a CITES export permit must contain the correct number of specimens (hides). *See* CITES Article II(2)(A) and Article IV(2)(A). *See* Appendix C. The evidence presented by the government indicates that 7,665 hides were imported into the United States, within the meaning of 16 U.S.C. § 1532(10), without the required permit. The permit indicated only 3,210 hides.[3] The bulk of the hides, therefore, were traveling without documentation in violation of CITES Article VI(5) which states that "[a] separate permit or certificate shall be required for each consignment of specimens."

The court finds that the government has established probable cause for instituting this forfeiture action, for violation of CITES as enacted under 16 U.S.C. § 1531(a)(4)(F) and § 1538(c)(1) (1985).

(c) *Probable Cause as to Violations of the Lacey Act*

■ There were reasonable grounds on which to base a belief that the defendant hides were imported in violation of the Lacey Act, 16 U.S.C. § 3372(a)(2)(A). This section provides that "[i]t is unlawful for any person—(2) to import, export, transport, sell, receive, acquire, or purchase in interstate or foreign commerce—(A) any fish or wildlife taken, possessed, transported, or sold in ... violation of any foreign law...."

The government has produced evidence that it is a violation of Bolivian law to hunt caimans (without regard to species), under a specific size. The court received into evidence, pursuant to Rule 44.1 of the Federal Rules of Civil Procedure, certified translations of Bolivian Supreme Decrees Numbers 08063,05665, and 05912. Supreme Decree No. 05912 declares in Article 3, that "[t]he hunting of caimans and alli-

---

**2.** Even if the claimants are correct and the hides are *Caiman crocodilus crocodilus* and not *Caiman crocodilus yacare,* the claimants must still comply with CITES regulations. The claimants have raised as an affirmative defense that the hides are *Caiman crocodilus crocodilus.*

**3.** *See supra* note 1 and accompanying text.

gators of dimensions smaller than 1.50 and 1.20 meters respectively, is prohibited." The government has presented testimony which demonstrates that 9,175 of the 10,875 hides were less than 85 centimeters.

The court has weighed the testimony of the witnesses and finds that the vast majority of the hides are from undersized caiman and were hunted in violation of Bolivian law. This, in turn, constitutes a violation of 16 U.S.C. § 3372(a)(2)(A) (1985).

Title 16, Section 3374(a)(1) of the United States Code provides that all "wildlife ... imported, exported, transported, sold, received, acquired or purchased contrary to the provisions of section 3372 ... shall be subject to forfeiture to the United States...." The term import is defined to mean: "to land on, bring into, or introduce into any place subject to the jurisdiction of the United States, whether or not such landing, bringing or introduction constitutes an importation within the meaning of the customs laws of the United States." 16 U.S.C. § 3371(b).

The court finds that there is probable cause to believe that the defendant hides were imported into the United States, within the meaning of 16 U.S.C. § 3371(b), in violation of the Lacey Act.

9. Having established probable cause to bring forfeiture proceedings, the burden shifts to the claimants to show by a preponderance of the evidence that the defendant property is not subject to forfeiture. *One 1975 Ford F100 Pick Up Truck*, 558 F.2d at 756.

■ 10. The claimants attempted to meet their burden by presenting testimony to rebut the testimony offered by the government, with respect to the shrinkage of the hides during tanning. The court has reviewed the testimony of the claimants' witness, Daniel Kijner, the testimony of the government's witness, John Wilson, and the court finds that the claimants have failed to show by a preponderance of the evidence that the defendant property is not subject to the forfeiture provisions of the Lacey Act, 16 U.S.C. § 3374(a)(1) (1985).

11. The claimants have failed to show, by a preponderance of the evidence, that the hides should not be subject to forfeiture under 16 U.S.C. § 1540(e)(4)(A), for being in violation of CITES, as implemented under 16 U.S.C. § 1531(a)(4)(F), and § 1538(c)(1) (1985).

12. The claimants have failed to sustain their burden of proving by a preponderance of the evidence that the defendant hides are not subject to forfeiture under either the Lacey Act or CITES as implemented under United States law. Therefore, the hides are subject to forfeiture under either of these provisions. Accordingly, the court finds it unnecessary to determine whether the claimants have met their burden of proving that the hides are not subject to forfeiture, under the Endangered Species Act. The court makes no finding with respect to whether the subspecies of the hides is *crocodilus* or *yacare*, other than the preliminary finding that the government had probable cause to believe that the hides were of the subspecies *yacare* and hence subject to forfeiture.

■ 13. The claimants have attempted to put forward an innocent owner defense by seeking to draw a categorical distinction between their conduct in connection with the hides and forfeiture proceedings brought for items connected in some way to drug trafficking. A claimant's innocence is not, standing alone, a sufficient defense to forfeiture. *United States v. One 1957 Rockwell Aero Commander 680 Aircraft*, 671 F.2d 414, 417 (10th Cir.1982); *See also United States v. 53 Eclectus Parrots*, 685 F.2d 1131, 1134 (9th Cir.1982) (provisions of the Tariff Act of 1930, 19 U.S.C. § 1527(b) "prescribes forfeiture without regard to the presence or absence of culpability of the owner of birds illegally imported.").

■ 14. In order to prevail under a defense of innocence, a claimant must demonstrate a lack of involvement in the underlying wrongful activity, lack of knowledge of the wrongful activity, and that the claimant has done all that was reasonably possible to prevent the illegal use of his property.

*Calero-Toledo*, 416 U.S. at 689, 94 S.Ct. at 2094; *See also One 1980 Stapelton Pleasure Vessel*, 575 F.Supp. 473, 478 (S.D.Fla. 1983).

The claimants have failed to sustain their burden of showing by a preponderence of the evidence that they lacked involvement, knowledge, or did all that was reasonably possible to prevent the proscribed use of their property. Merely raising innocence as a defense to forfeiture is insufficient. There must be an affirmative showing of each of the elements of the defense, on the part of the claimant(s).

■ 15. The entire *res* (the defendant hides) is subject to forfeiture, not just the number of hides which exceed the amount declared on the CITES permit. *See United States v. $11,580 in United States Currency*, 454 F.Supp. 376, 383 (M.D.Fla.1978). The entire number of hides should have been reported to the authorities who issued the CITES permit, consequently, the entire *res* is forfeitable. The local authorities, within the various signatory countries to CITES, must know how many animals are being exported, in order to protect the listed species from exploitation.

The purpose of CITES (and the Endangered Species Act) is to prevent extinction of certain species by "over-exploitation through international trade." CITES, Proclamation of the Contracting States at § 4. To accomplish this aim, the penalties for violations of CITES must be stringent. Merely forfeiting the offending portion of the *res* would only serve to thwart the intent and undermine the effectiveness of both CITES and the Endangered Species Act. *See* 16 U.S.C. § 1531(b) ("The purposes of [the Endangered Species Act] are to provide a ... program for the conservation of such endangered species and threatened species and to take such steps as may be appropriate to achieve the purposes of [CITES]...."); *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 184, 98 S.Ct. 2279, 2297, 57 L.Ed.2d 117 (1978) ("The plain intent of Congress in enacting [the Endangered Species Act] was to halt and reverse the trend toward species extinction, whatever the cost.").

16. The defendant hides are subject to seizure and forfeiture under 16 U.S.C. § 1538(c)(1) and 16 U.S.C. § 3372(a)(2)(A). Accordingly, it is hereby

ORDERED AND ADJUDGED that a Judgment of Forfeiture is entered in favor of the plaintiff, the United States of America, for the entire amount of the *res*. The plaintiff shall submit, within ten (10) days of the filing of this order, a proposed final judgment of forfeiture.

## APPENDIX A

### APPENDIX II

Interpretation:

1. Species included in this Appendix are referred to:

 (a) by the name of the species; or

 (b) as being all of the species included in a higher taxon or designated part thereof.

2. The abbreviation "spp." is used to denote all the species of a higher taxon.

3. Other references to taxa higher than species are for the purposes of information or classification only.

4. An asterisk (*) placed against the name of a species or higher taxon indicates that one or more geographically separate populations, sub-species or species of that taxon are included in Appendix I and that these populations, sub-species or species are excluded from Appendix II.

5. The symbol (#) followed by a number placed against the name of a species or higher taxon designates parts or derivatives which are specified in relation thereto for the purposes of the present Convention as follows:

 # 1 designates root

 # 2 designates timber

 # 3 designates trunks

6. The symbol (−) followed by a number placed against the name of a species or higher taxon indicates the exclusion from that species or taxon of designated geographically separate populations, sub-species, species or groups of species as follows:

 − 101 Species which are not succulents

7. The symbol (+) followed by a number placed against the name of a species or higher taxon denotes that only designated geographically separate populations, sub-species or species of that species or taxon are included in this Appendix as follows:

+ 201 All North American sub-species

+ 202 New Zealand species

+ 203 All species of the family in the Americas

+ 204 Australian population.

FAUNA

MAMMALIA

| | |
|---|---|
| MARSUPIALIA | |
| Macropodidae | Dendrolagus inustus |
| | Dendrolagus ursinus |
| INSECTIVORA | |
| Erinaceidae | Erinaceus frontalis |
| PRIMATES | |
| Lemuridae | Lemur catta * |
| Lorisidae | Nycticebus coucang |
| | Loris tardigradus |
| Cebidae | Cebus capucinus |
| Cercopithecidae | Macaca sylvanus |
| | Colobus badius gordonorum |
| | Colobus verus |
| | Rhinopithecus roxellanae |
| | Presbytis johnii |
| Pongidae | Pan paniscus |
| | Pan troglodytes |
| EDENTATA | |
| Myrmecophagidae | Myrmecophaga tridactyla |
| | Tamandua tetradactyla chapadensis |
| Bradypodidae | Bradypus boliviensis |
| PHOLIDOTA | |
| Manidae | Manis crassicaudata |
| | Manis pentadactyla |
| | Manis javanica |
| LAGOMORPHA | |
| Leporidae | Nesolagus netscheri |
| RODENTIA | |
| Heteromyidae | Dipodomys phillipsii phillipsii |
| Sciuridae | Ratufa spp. |
| | Lariscus hosei |
| Castoridae | Castor canadensis frondator |
| | Castor canadensis repentinus |
| Cricetidae | Ondatra zibethicus bernardi |
| CARNIVORA | |
| Canidae | Canis lupus pallipes |
| | Canis lupus irremotus |

| | |
|---|---|
| CARNIVORA—Continued | Canis lupus crassodon |
| Canidae—Continued | Chrysocyon brachyurus |
| | Cuon alpinus |
| Ursidae | Ursus (Thalarctos) maritimus |
| | Ursus arctos * +201 |
| | Helarctos malayanus |
| Procyonidae | Ailurus fulgens |
| Mustelidae | Martes americana atrata |
| Viveridae | Prionodon linsang |
| | Cynogale bennetti |
| | Helogale derbianus |
| Felidae | Felis yagouaroundi * |
| | Felis colocolo pajeros |
| | Felis colocolo crespoi |
| | Felis colocolo budini |
| | Felis concolor missoulensis |
| | Felis concolor mayensis |
| | Felis concolor azteca |
| | Felis serval |
| | Felis lynx isabellina |
| | Felis wiedii * |
| | Felis pardalis * |
| | Felis tigrina * |
| | Felis (=Caracal) caracal |
| | Panthera leo persica |
| | Panthera tigris altaica |
| | (=amurensis) |
| PINNIPEDIA | |
| Otariidae | Arctocephalus australis |
| | Arctocephalus galapagoensis |
| | Arctocephalus philippii |
| | Arctocephalus townsendi |
| Phocidae | Mirounga australis |
| | Mirounga leonina |
| TUBULIDENTATA | |
| Orycteropidae | Orycteropus afer |
| SIRENIA | |
| Dugongidae | Dugong dugon * +204 |
| Trichechidae | Trichechus senegalensis |
| PERISSODACTYLA | |
| Equidae | Equus hemionus * |
| Tapiridae | Tapirus terrestris |
| Rhinocerotidae | Diceros bicornis |
| ARTIODACTYLA | |
| Hippopotamidae | Choeroposis liberiensis |
| Cervidae | Cervus elaphus bactrianus |
| | Pudu mephistophiles |
| Antilocapridae | Antilocapra americana mexicana |
| Bovidae | Cephalophus monticola |
| | Oryx (tao) dammah |

| | |
|---|---|
| ARTIODACTYLA—Continued | Addax masomaculatus |
| Bovidae—Continued | Pantholops hodgsoni |
| | Capra falconeri * |
| | Ovis ammon * |
| | Ovis canadensis |

AVES

| | |
|---|---|
| SPHENISCIFORMES | |
| Spheniscidae | Spheniscus demersus |
| RHEIFORMES | |
| Rheidae | Rhea americana albescens |
| | Pterocnemia pennata pennata |
| | Pterocnemia pennata garleppi |
| TINAMIFORMES | |
| Tinamidae | Rhynchotus rufescens rufescens |
| | Rhynchotus rufescens pallescens |
| | Rhynchotus rufescens maculicollis |
| CICONIIFORMES | |
| Ciconiidae | Ciconia nigra |
| Threskiornithidae | Geronticus calvus |
| | Platalea leucorodia |
| Phoenicopteridae | Phoenicoparrus ruber chilensis |
| | Phoenicoparrus andinus |
| | Phoenicoparrus jamesi |
| PELECANIFORMES | |
| Pelecanidae | Pelecanus crispus |
| ANSERIFORMES | |
| Anatidae | Anas aucklandica aucklandica |
| | Anas aucklandica chlorotis |
| | Anas bernieri |
| | Dendrocygna arborea |
| | Sarkidiornis melanotos |
| | Anser albifrons gambelli |
| | Cygnus bewickii jankowskii |
| | Cygnus melancoryphus |
| | Coscoroba coscoroba |
| | Branta ruficollis |
| FALCONIFORMES | |
| Accipitridae | Gypaetus barbatus meridionalis |
| | Aquila chrysaetos |
| Falconidae | Spp. * |
| GALLIFORMES | |
| Megapodiidae | Megapodius freycinet nicobariensis |
| | Megapodius freycinet abbotti |
| Tetraonidae | Tympanuchus cupido pinnatus |
| Phasianidae | Francolinus ochropectus |
| | Francolinus swierstrai |
| | Catreus wallichii |
| | Polyplectron malacense |
| | Polyplectron germaini |
| | Polyplectron bicalcaratum |
| | Gallus sonneratii |

| | |
|---|---|
| GALLIFORMES—Continued | Argusianus argus |
| Phasianidae—Continued | Ithaginus cruentus |
| | Cyrtonyx montezumae montezumae |
| | Cyrtonyx montezumae mearnsi |
| **GRUIFORMES** | |
| Gruidae | Balearica regulorum |
| | Grus canadensis pratensis |
| Rallidae | Gallirallus australis hectori |
| Otididae | Chlamydotis undulata |
| | Choriotis nigriceps |
| | Otis tarda |
| **CHARADRIIFORMES** | |
| Scolopacidae | Numenius tenuirostris |
| | Numenius minutus |
| Laridae | Larus brunneicephalus |
| **COLUMBIFORMES** | |
| Columbidae | Gallicolumba luzonica |
| | Goura cristata |
| | Goura scheepmakeri |
| | Goura victoria |
| | Caloenas nicobarica pelewensis |
| **PSITTACIFORMES** | |
| Psittacidae | Coracopsis nigra barklyi |
| | Prosopeia personata |
| | Eunymphicus cornutus |
| | Cyanoramphus unicolor |
| | Cyanoramphus novaezelandiae |
| | Cyanoramphus malherbi |
| | Poicephalus robustus |
| | Tanygnathus luzoniensis |
| | Probosciger aterrimus |
| **CUCULIFORMES** | |
| Musophagidae | Turaco corythaix |
| | Gallirex porphyreolophus |
| **STRIGIFORMES** | |
| Strigidae | Otus nudipes newtoni |
| **CORACIIFORMES** | |
| Bucerotidae | Buceros rhinoceros rhinoceros |
| | Buceros bicornis |
| | Buceros hydrocorax hydrocorax |
| | Aceros narcondami |
| **PICIFORMES** | |
| Picidae | Picus squamatus flavirostris |
| **PASSERIFORMES** | |
| Cotingidae | Rupicola rupicola |
| | Rupicola peruviana |
| Pittidae | Pitta brachyura nympha |
| Hirundinidae | Pseudochelidon sirintarae |
| Paradisaeidae | Spp. |

PASSERIFORMES—Continued

| | |
|---|---|
| Muscicapidae | Muscicapa ruecki |
| Fringillidae | Spinus yarrellii |

## AMPHIBIA

URODELA

| | |
|---|---|
| Ambystomidae | Ambystoma mexicanum |
| | Ambystoma dumerillii |
| | Ambystoma lermaensis |

SALIENTIA

| | |
|---|---|
| Bufonidae | Bufo retiformis |

## REPTILIA

CROCODYLIA

| | |
|---|---|
| Alligatoridae | Caiman crocodilus crocodilus |
| | Caiman crocodilus yacare |
| | Caiman crocodilus fuscus (chiapasius) |
| | Paleosuchus palpebrosus |
| | Paleosuchus trigonatus |
| Crocodylidae | Crodocylus johnsoni |
| | Crocodylus novaeguineae novaeguineae |
| | Crocodylus prorsus |
| | Crocodylus acutus |

TESTUDINATA

| | |
|---|---|
| Emydidae | Clemmys muhlenbergi |
| Testudinidae | Chersine spp. |
| | Geochelone spp.* |
| | Gopherus spp. |
| | Homopus spp. |
| | Kinixys spp. |
| | Malacochersus spp. |
| | Pyxis spp. |
| | Testudo spp.* |
| Cheloniidae | Caretta caretta |
| | Chelonia mydas |
| | Chelonia depressa |
| | Eretmochelys imbricata bissa |
| | Lepidochelys olivacea |
| Dermochelidae | Dermochelys coriacea |
| Pelomedusidae | Podocnemis spp. |

LACERTILIA

| | |
|---|---|
| Teiidae | Cnemidophorus hyperythrus |
| Iguanidae | Conolophus pallidus |
| | Cololophus subcristatus |
| | Amblyrhynchus cristatus |
| | Phrynosoma coronatum blainvillei |
| Helodermatidae | Heloderma suspectum |
| | Heloderma horridum |
| Varanidae | Varanus spp.* |

SERPENTES

| | |
|---|---|
| Boidae | Epicrates cenchris cenchris |
| | Eunectes notaeus |
| | Constrictor constrictor |
| | Python spp.* |

SERPENTES—Continued

| | |
|---|---|
| Colubridae | Cyclagras gigas |
| | Pseudoboa cloelia |
| | Elachistodon westermanni |
| | Thamnophis elegans hammondi |

## PISCES

ACIPENSERIFORMES

| | |
|---|---|
| Acipenseridae | Acipenser fulvescens |
| | Acipenser sturio |

OSTEOGLOSSIFORMES

| | |
|---|---|
| Osteoglossidae | Arapaima gigas |

SALMONIFORMES

| | |
|---|---|
| Salmonidae | Stenodus leucichthys leucichthys |
| | Salmo chrysogaster |

CYPRINIFORMES

| | |
|---|---|
| Cyprinidae | Plagopterus argentissimus |
| | Ptychocheilus lucius |

ATHERINIFORMES

| | |
|---|---|
| Cyprinodontidae | Cynolebias constanciae |
| | Cynolebias marmoratus |
| | Cynolebias minimus |
| | Cynolebias opalescens |
| | Cynolebias splendens |
| Poeciliidae | Xiphophorus couchianus |

COELACANTHIFORMES

| | |
|---|---|
| Coelacanthidae | Latimeria chalumnae |

CERATODIFORMES

| | |
|---|---|
| Ceratodidae | Neoceratodus forsteri |

## MOLLUSCA

NAIADOIDA

| | |
|---|---|
| Unionidae | Cyprogenia aberti |
| | Epioblasma (=Dysnomia) torulosa rangiana |
| | Fusconaia subrotunda |
| | Lampsilis brevicula |
| | Lexingtonia dolabelloides |
| | Pleorobema clava |

STYLOMMATOPHORA

| | |
|---|---|
| Camaenidae | Papustyla (=Papuina) pulcherrima |
| Paraphantidae | Paraphanta spp. +202 |

PROSOBRANCHIA

| | |
|---|---|
| Hydrobiidae | Coahuilix hubbsi |
| | Cochliopina milleri |
| | Durangonella coahuilae |
| | Mexipyrgus carranzae |
| | Mexipyrgus churinceanus |
| | Mexipyrgus escobedae |
| | Mexipyrgus lugoi |
| | Mexipyrgus mojarralis |

| | |
|---|---|
| PROSOBRANCHIA—Continued<br>Hydrobiidae—Continued | Mexipyrgus multilineatus<br>Mexithauma quadripaludium<br>Nymphophilus minckleyi<br>Paludiscala caramba |

### INSECTA

| | |
|---|---|
| LEPIDOPTERA | |
| Papilionidae | Parnassius apollo apollo |

### FLORA

| | |
|---|---|
| APOCYNACEAE | Pachypodium spp. |
| ARALIACEAE | Panax quinquefolium #1 |
| ARAUCARIACEAE | Araucaria araucana #2 |
| CACTACEAE | Cactaceae spp. +203<br>Rhipsalis spp. |
| COMPOSITAE | Saussurea lappa #1 |
| CYATHEACEAE | Cyathea (Hemitella) capensis #3<br>Cyathea dredgei #3<br>Cyathea mexicana #3<br>Cyathea (Alsophila) salvinii #3 |
| DIOSCOREACEAE | Dioscorea deltoidea #1 |
| EUPHORBIACEAE | Euphorbia spp. –101 |
| FAGACEAE | Quercus copeyensis #2 |
| LEGUMINOSAE | Thermopsis mongolica |
| LILIACEAE | Aloe spp.* |
| MELIACEAE | Swietenia humilis #2 |
| ORCHIDACEAE | Spp.* |
| PALMAE | Arenga ipot<br>Phoenix hanceana var. philippinensis<br>Zalacca clemensiana |
| PORTULACACEAE | Anacampseros spp. |
| PRIMULACEAE | Cyclamen spp. |
| SOLANACEAE | Solanum sylvestris |
| STERCULIACEAE | Basiloxylon excelsum #2 |
| VERBENACEAE | Caryopteris mongolica |
| ZYGOPHYLLACEAE | Guaiacum sanctum #2 |

---

### APPENDIX B

#### ARTICLE V

##### REGULATION OF TRADE IN SPECIMENS OF SPECIES INCLUDED IN APPENDIX III

1. All trade in specimens of species included in Appendix III shall be in accordance with the provisions of this Article.

2. The export of any specimen of a species included in Appendix III from any State which has included that species in Appendix III shall require the prior grant and presentation of an export permit. An export permit shall only be granted when the following conditions have been met:

(*a*) a Management Authority of the State of export is satisfied that the specimen was not obtained in contravention of

the laws of that State for the protection of fauna and flora; and

(b) a Management Authority of the State of export is satisfied that any living specimen will be so prepared and shipped as to minimize the risk of injury, damage to health or cruel treatment.

3. The import of any specimen of a species included in Appendix III shall require, except in circumstances to which paragraph 4 of this Article applies, the prior presentation of a certificate of origin and, where the import is from a State which has included that species in Appendix III, an export permit.

4. In the case of re-export, a certificate granted by the Management Authority of the State of re-export that the specimen was processed in that State or is being re-exported shall be accepted by the State of import as evidence that the provisions of the present Convention have been complied with in respect of the specimen concerned.

## ARTICLE VI
### PERMITS AND CERTIFICATES

1. Permits and certificates granted under the provisions of Articles III, IV, and V shall be in accordance with the provisions of this Article.

2. An export permit shall contain the information specified in the model set forth in Appendix IV, and may only be used for export within a period of six months from the date on which it was granted.

3. Each permit or certificate shall contain the title of the present Convention, the name and any identifying stamp of the Management Authority granting it and a control number assigned by the Management Authority.

4. Any copies of a permit or certificate issued by a Management Authority shall be clearly marked as copies only and no such copy may be used in place of the original, except to the extent endorsed thereon.

5. A separate permit or certificate shall be required for each consignment of specimens.

6. A Management Authority of the State of import of any specimen shall cancel and retain the export permit or re-export certificate and any corresponding import permit presented in respect of the import of that specimen.

7. Where appropriate and feasible a Management Authority may affix a mark upon any specimen to assist in identifying the specimen. For these purposes "mark" means any indelible imprint, lead seal or other suitable means of identifying a specimen, designed in such a way as to render its imitation by unauthorized persons as difficult as possible.

## ARTICLE VII
### EXEMPTIONS AND OTHER SPECIAL PROVISIONS RELATING TO TRADE

1. The provisions of Articles III, IV and V shall not apply to the transit or transshipment of specimens through or in the territory of a Party while the specimens remain in Customs control.

2. Where a Management Authority of the State of export or re-export is satisfied that a specimen was acquired before the provisions of the present Convention applied to that specimen, the provisions of Articles III, IV and V shall not apply to that specimen where the Management Authority issues a certificate to that effect.

3. The provisions of Articles III, IV and V shall not apply to specimens that are personal or household effects. This exemption shall not apply where:

(a) in the case of specimens of a species included in Appendix I, they were acquired by the owner outside his State of usual residence and are being imported into that State; or

(b) in the case of specimens of species included in Appendix II:

(i) they were acquired by the owner outside his State of usual residence and in a State where removal from the wild occurred;

(ii) they are being imported into the owner's State of usual residence; and

(*iii*) the State where removal from the wild occurred requires the prior grant of export permits before any export of such specimens;

unless a Management Authority is satisfied that the specimens were acquired before the provisions of the present Convention applied to such specimens.

4. Specimens of an animal species included in Appendix I bred in captivity for commercial purposes, or of a plant species included in Appendix I artificially propagated for commercial purposes, shall be deemed to be specimens of species included in Appendix II.

5. Where a Management Authority of the State of export is satisfied that any specimen of an animal species was bred in captivity or any specimen of a plant species was artificially propagated, or is a part of such an animal or plant or was derived therefrom, a certificate by that Management Authority to that effect shall be accepted in lieu of any of the permits or certificates required under the provisions of Articles III, IV or V.

6. The provisions of Articles III, IV and V shall not apply to the noncommercial loan, donation or exchange between scientists or scientific institutions registered by a Management Authority of their State.

### APPENDIX C

(*g*) "Management Authority" means a national management authority designated in accordance with Article IX:

(*h*) "Party" means a State for which the present Convention has entered into force.

### ARTICLE II

#### FUNDAMENTAL PRINCIPLES

1. Appendix I shall include all species threatened with extinction which are or may be affected by trade. Trade in specimens of these species must be subject to particularly strict regulation in order not to endanger further their survival and must only be authorized in exceptional circumstances.

2. Appendix II shall include:

(*a*) all species which although not necessarily now threatened with extinction may become so unless trade in specimens of such species is subject to strict regulation in order to avoid utilization incompatible with their survival; and

(*b*) other species which must be subject to regulation in order that trade in specimens of certain species referred to in sub-paragraph (a) of this paragraph may be brought under effective control.

3. Appendix III shall include all species which any Party identifies as being subject to regulation within its jurisdiction for the purpose of preventing or restricting exploitation, and as needing the cooperation of other parties in the control of trade.

4. The Parties shall not allow trade in specimens of species included in Appendices I, II and III except in accordance with the provisions of the present Convention.

### ARTICLE III

#### REGULATION OF TRADE IN SPECIMENS OF SPECIES INCLUDED IN APPENDIX I

1. All trade in specimens of species included in Appendix I shall be in accordance with the provisions of this Article.

2. The export of any specimen of a species included in Appendix I shall require the prior grant and presentation of an export permit. An export permit shall only be granted when the following conditions have been met:

(*a*) a Scientific Authority of the State of export has advised that such export will not be detrimental to the survival of that species;

(*b*) a Management Authority of the State of export is satisfied that the specimen was not obtained in contravention of the laws of that State for the protection of fauna and flora;

(*c*) a Management Authority of the State of export is satisfied that any liv-

ing specimen will be so prepared and shipped as to minimize the risk of injury, damage to health or cruel treatment; and

(*d*) a Management Authority of the State of export is satisfied that an import permit has been granted for the specimen.

3. The import of any specimen of a species included in Appendix I shall require the prior grant and presentation of an import permit and either an export permit or a re-export certificate. An import permit shall only be granted when the following conditions have been met:

(*a*) a Scientific Authority of the State of import has advised that the import will be for purposes which are not detrimental to the survival of the species involved:

(*b*) a Scientific Authority of the State of import is satisfied that the proposed recipient of a living specimen is suitably equipped to house and care for it: and

(*c*) a Management Authority of the State of import is satisfied that the specimen is not to be used for primarily commercial purposes.

4. The re-export of any specimen of a species included in Appendix I shall require the prior grant and presentation of a re-export certificate. A re-export certificate shall only be granted when the following conditions have been met:

(*a*) a Management Authority of the State of re-export is satisfied that the specimen was imported into that State in accordance with the provisions of the present Convention;

(*b*) a Management Authority of the State of re-export is satisfied that any living specimen will be so prepared and shipped as to minimize the risk of injury, damage to health or cruel treatment; and

(*c*) a Management Authority of the State of re-export is satisfied that an import permit has been granted for any living specimen.

5. The introduction from the sea of any specimen of a species included in Appendix I shall require the prior grant of a certificate from a Management Authority of the State of introduction. A certificate shall only be granted when the following conditions have been met:

(*a*) a Scientific Authority of the State of introduction advises that the introduction will not be detrimental to the survival of the species involved;

(*b*) a Management Authority of the State of introduction is satisfied that the proposed recipient of a living specimen is suitably equipped to house and care for it; and

(*c*) a Management Authority of the State of introduction is satisfied that the specimen is not to be used for primarily commercial purposes.

ARTICLE IV

REGULATION OF TRADE IN SPECI-
MENS OF SPECIES INCLUDED
IN APPENDIX II

1. All trade in specimens of species included in Appendix II shall be in accordance with the provisions of this Article.

2. The export of any specimen of a species included in Appendix II shall require the prior grant and presentation of an export permit. An export permit shall only be granted when the following conditions have been met:

(*a*) a Scientific Authority of the State of export has advised that such export will not be detrimental to the survival of that species.